**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **TRINA VOWELL**, also known as Kelly, Defendant–Appellant

NO. 15525

(CR. NO. 90–1578)

SEPTEMBER 18, 1992
Amended by Order Filed September 29, 1992

BURNS, C.J., HEEN, AND WATANABE, JJ.

OPINION OF THE COURT BY WATANABE, J.

Defendant–Appellant Trina Vowell (Defendant) appeals her conviction of Burglary in the First Degree, a violation of Hawai'i

Revised Statutes (HRS) § 708–810 (1985), on two grounds: (1) that there was insufficient evidence at trial to prove that she "unlawfully entered or remained" in the nightclub she was charged with burglarizing, since she was privileged to be in the club as an employee thereof, and since the club was open to the general public at the time of the incident; and (2) that the trial court abused its discretion in not allowing her to introduce evidence that the location of the crime scene, a private bedroom and bathroom in a nightclub, existed in violation of the building code. We affirm.

## FACTS

Sometime in 1988, a group of women investors, including Katherine Ogata (Ogata), the complainant in this case, loaned money to Defendant to open "Club Porky's," a nightclub in Pearl City. Defendant operated the nightclub for about a year, but in October 1989, transferred the club to Ogata. Although there is contrary testimony by Ogata, Defendant apparently kept her master key to the nightclub after the transfer and continued to work there, tending the bar, manning the disco booth, running newspaper ads, and performing other duties.

On October 15, 1989, Ogata and Defendant entered into an "Agency Agreement," whereby Defendant agreed, for a fifteen percent (15%) commission, to be Ogata's exclusive agent to solicit and obtain entertainment for the nightclub. However, the relationship between Ogata and Defendant soured after a few months, and although neither party terminated the agency agreement, Defendant stopped going to work at Club Porky's. Defendant later found a job bartending at another bar, only to be fired after Ogata complained to that bar's owner about her hiring Defendant.

This "badmouthing" angered Defendant and on August 8, 1990, at about 5:00 p.m., she telephoned Ogata at Club Porky's and allegedly threatened to kill her. About an hour later, Defendant stormed into the nightclub through the back door, and began searching the club's interior for Ogata. In the process, she yanked

the air pump and tubing from an aquarium near the bar, and pulled a telephone plug out of the wall.

Eventually, Defendant entered the rear portion of the club, through a kitchen door marked "private." Once inside the kitchen, she approached an adjacent door, which led to what was once a storeroom, but which had recently been renovated into Ogata's bedroom and bathroom. Defendant kicked this door twice, and when it did not open, she turned the knob, found it unlocked, and opened the door.

Upon entering the converted storeroom, Defendant "saw a fancy, brand new bed, new carpets, and it was like a bedroom and she heard the shower running." Transcript at 307. She then went into the bathroom, found the door open, found Ogata in the shower, grabbed Ogata by the hair, and pulled her to the floor. Subsequently, several club patrons and employees rescued Ogata, the police were called to the scene, and Defendant was arrested and charged with Burglary in the First Degree.

After a jury trial, Defendant was convicted of Burglary in the First Degree. This timely appeal followed.

## DISCUSSION

### I.

Defendant was charged with violating HRS § 708–810, which provides in pertinent part as follows:

> **Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if he *intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person* or against property rights, and:
>
> * * *
>
> (b) He *intentionally*, knowingly, or recklessly *inflicts* or attempts to inflict *bodily injury on anyone in the course of committing the offense*[.]

* * *

(2) *An act occurs "in the course of committing the offense" if it occurs* in effecting entry or *while in the building* or in the immediate flight therefrom. [Emphases added.]

* * *

Defendant conceded at trial that she "intentionally, knowingly, or recklessly inflicted bodily injury upon Katherine Ogata." Transcript at 343. Defendant maintains, however, that she lawfully entered and remained at Club Porky's on the night of the assault, and thus could not be convicted of Burglary in the First Degree. Defendant contends that she was privileged to enter all areas of Club Porky's, including the converted storeroom, because she was an "employee" of the club, by virtue of the October 15, 1989 agency agreement, and because she had a master key which allowed her access to all parts of the club. Moreover, Defendant asserts that because Club Porky's was open to the general public at the time of her entry, and she was never asked to leave, she did not "intentionally enter or remain unlawfully" in the building, an essential element of the crime of First Degree Burglary. We find Defendant's contentions to be without merit.

Our review of the agency agreement between Defendant and Ogata reveals that it did not create an employment relationship but merely granted Defendant, for a commission, "the exclusive right to solicit and obtain bookings and/or musical playing engagements" on Ogata's behalf. The agreement is silent about Defendant's having access to all areas of the nightclub. On its face, the agreement provides no explicit authority for Defendant to enter what once was the club's storeroom and which, at the time of Defendant's entry, was Ogata's bedroom and bathroom.

Moreover, the fact that Defendant may have retained a master key to Club Porky's when she transferred the nightclub to Ogata does not make her entry to Ogata's bedroom lawful. There is no

evidence that Ogata was aware of or approved the retention, nor that any authorization or invitation that Defendant may have had to enter Club Porky's, extended to Ogata's private bedroom and bathroom.

Defendant urges us to follow the precedent of the Alaska appellate court in *Arabie v. State*, 699 P.2d 890 (Alaska Ct. App. 1985). In *Arabie*, the defendant entered the rear of a 24–hour grocery and liquor store and was apprehended inside a walk–in cooler that had an "employees only" sign posted on it, with a case of beer in his hands. The Alaska court reversed the defendant's burglary conviction, concluding that: (1) the walk–in cooler was not a separate unit but a storage area within a single business structure which included a store; and (2) since the store was open to the public when the defendant entered, the defendant's entry into the walk–in cooler and rear storage area was not unlawful under the burglary statute.

We decline to follow *Arabie*.

Unlike Alaska, Hawai'i's Penal Code includes definitions of "building" and "enter or remain unlawfully," which, for purposes of the burglary statute, clearly distinguish buildings, such as Club Porky's, which are only partly open to the public. Those definitions are set forth in HRS § 708–800 (1991 Supp.) and provide as follows:

> **"Building"** includes any structure, . . . ; *each unit of a building consisting of two or more units separately secured or occupied is a separate building.*
>
> \* \* \*
>
> **"Enter or remain unlawfully."** *A person "enters or remains unlawfully" in or upon premises when he is not* licensed, invited, or *otherwise privileged to do so.* A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a law-

ful order not to enter or remain, personally communicated to him by the owner of the premises or some other authorized person. *A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public*[.] [Emphases added.]

Under the plain language of HRS § 708–800, even if Defendant may have entered the premises of Club Porky's lawfully, she cannot claim a privilege to enter Ogata's bedroom and bathroom if such an area is not "open to the public." In reviewing the record, we find that there is substantial evidence to indicate that this area (i.e., bedroom and bathroom) was not open to the public. The area consisted of two units which were separately secured, and required a separate key for entry. The area could be secured from the inside and was used as Ogata's private dwelling. Furthermore, no one was allowed to enter the area without first obtaining Ogata's permission.

Moreover, even if Defendant had previously been authorized to enter what was once the storeroom, she admitted that at the time of her entry, it was "very clear" to her that this area was no longer being used as such:

Q. Miss Vowell, when you went into the bedroom on August 8th, 1990, there was no desk in there was there?

A. No.

Q. There was no refrigerator?

A. I have no—only thing that I recognize . . . that was there was the bed and carpeting.

Q. *Was it clear to you that this was not a storeroom any more when you walked in?*

A. *Very clear.*

Transcript at 455 (emphases added).

Based on the foregoing, there was substantial evidence to indicate that Ogata's bedroom and bathroom constituted a "building" not open to the general public within the meaning of HRS § 708–800, and Defendant was therefore not privileged to enter the private area. Defendant's motions for judgment of acquittal were properly denied.

## II.

Defendant also argues that the trial court abused its discretion in refusing to admit evidence that Ogata's bedroom and bathroom existed in violation of the building code and that this refusal "violated her constitutional right to compulsory process." Defendant submits that evidence of the bedroom's illegal existence was relevant to her state of mind at the time of her entry into the converted storeroom and whether she believed she had authority to enter and remain therein. Defendant asserts that because she knew that it was illegal for a bedroom to exist within a nightclub, "even upon seeing the bed and carpet in the storeroom, it never occurred to her that it was a bedroom."

We note initially that the responsibility for maintaining the delicate balance between the probative value and prejudicial effect of any evidence lies largely within the discretion of the trial court, *State v. Iaukea*, 56 Haw. 343, 349, 537 P.2d 724, 729 (1975), and even where error occurs in the admission of evidence, there will be no reversal where, on the record as a whole, no prejudice to the appellant has resulted. *State v. Nakamura*, 65 Haw. 74, 80, 648 P.2d 183, 187 (1982).

In the instant case, we fail to see how the trial court abused its discretion by refusing to admit evidence of the illegality of Ogata's bedroom. The fact that Ogata could be prosecuted for having the illegal bedroom was irrelevant to the issue of whether Defendant was authorized to be there. Moreover, the trial court did allow Defendant to testify that it was her "belief" that the former storeroom could not be a private bedroom because such was not allowed

in a nightclub. Therefore, Defendant was allowed to testify as to her state of mind.

Based on a careful review of the record, we find that the trial court did not abuse its discretion in refusing to admit the evidence in issue.

## CONCLUSION

Accordingly, Defendant's Judgment of Conviction and Sentence entered by the First Circuit Court on July 22, 1991 is affirmed.

*Edie A. Feldman*, Deputy Public Defender, on the brief for defendant–appellant.

*Doraine Meyer Belnap*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.