The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John LOPEZ, Defendant–Appellant.

No. 94CA1171.

Colorado Court of Appeals, Div. III.

Jan. 23, 1997.

As Modified on Denial of Rehearing May 8, 1997.

Certiorari Denied Nov. 10, 1997.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1996 Cum.Supp.).

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, David K. Rees, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

Frolich & Jensen, LLC., Lindy Frolich, Denver, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, John Lopez, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree felony murder, second degree burglary, theft, and robbery. We reverse and remand for a new trial.

In March 1993, defendant's stepfather was beaten and stabbed to death in the bedroom of his home. A safe containing an estimated $170,000 in cash and jewelry was taken from the home during the attack. No other valuables were removed.

Defendant and a friend of his were immediate suspects and defendant was first questioned about the crime in March 1993. Although police lacked sufficient evidence to make an arrest, defendant's mother remained in contact with the investigating officer, urging him to solve the murder. The officer told her that defendant and his friend were involved in the crime, but that the police lacked evidence to arrest them.

In a bizarre series of events, defendant's mother became entangled in the case against defendant. In July 1993, she allegedly assaulted him in the parking lot of a grocery store. Two days later she went to see him, held a loaded gun to his head, and threatened to kill him, herself, and his younger sister unless he went to the police to talk to the investigating officer. That visit occurred on a Friday and she gave him until Sunday to agree to her ultimatum.

The following Monday defendant appeared at the police station. He was interrogated there about the murder that day and he also left and returned every day during the next four days for further interrogation. Not only was defendant's mother present at the interrogations, but she actively assisted in questioning defendant. During these interviews, which lasted nearly 30 hours over the course of the five days, defendant admitted involvement in the theft. In doing so, he implicated himself as a complicitor in the murder of his stepfather and also in a previous theft from the stepfather's home. Defendant's confession was the primary evidence which led to the convictions at issue here.

## I.

Defendant first contends that the statements he made during his interviews with police were involuntary and should have been suppressed. We disagree.

■ The prosecution may not use a defendant's involuntary statements for any purpose at trial. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *People v. Branch*, 805 P.2d 1075 (Colo.1991).

■ A statement is involuntary if coercive governmental conduct played a significant role in inducing it. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *People v. Dracon*, 884 P.2d 712 (Colo. 1994); *see also People v. Whalin*, 885 P.2d 293 (Colo.App.1994). Such activity can take the form of overt physical abuse and threats or subtle forms of psychological coercion. *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *People v. Gennings*, 808 P.2d 839 (Colo.1991).

■ In determining voluntariness, a court should consider the totality of the circumstances. *People v. Breidenbach*, 875 P.2d 879 (Colo.1994). Factors to be considered include:

> [W]hether the defendant was in custody or was free to leave and was aware of his situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived his *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment sta-

tus, and prior experience with law enforcement and the criminal justice system.

*People v. Gennings, supra*, 808 P.2d at 844.

■ A trial court's factual findings regarding voluntariness are entitled to deference on review. *People v. Breidenbach, supra*. However, the ultimate determination whether a statement is voluntary is a legal question and is reviewed *de novo*. *See People v. Gennings, supra; see also Arizona v. Fulminante, supra*.

■ Here, after a lengthy hearing and after viewing many hours of the videotaped interviews with defendant, the trial court made clear, specific findings relating to each factor specified in *People v. Gennings, supra*. Based on the totality of the circumstances, it determined with full record support that, although coercive techniques were used at various points in the interrogation, defendant's final statements regarding his role in the offenses nevertheless were voluntary and did not result from coercive police tactics.

We also find no error in the trial court's conclusion that defendant's mother was *not* an agent of the police.

■ Constitutional violations resulting in the exclusion of evidence generally do not apply to evidence obtained by private parties or evidence resulting from the conduct of private parties. *See Colorado v. Connelly, supra* (outrageous behavior by private party seeking to secure confession against a defendant does not make evidence inadmissible under Due Process Clause). An exception to this rule exists when private persons become agents of the police by virtue of their suggestion, order, request, or participation for purposes of criminal investigation. *People v. Henderson*, 38 Colo.App. 308, 559 P.2d 1108 (1976).

■ The test as to whether a private citizen has acted as an agent of the police for purposes of criminal investigation is whether the person "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state." *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564, 595 (1971). Critical factors in-

clude whether the prosecution knew of and acquiesced in the intrusive conduct, and whether the party performing such intrusive conduct intended to assist law enforcement efforts. *United States v. Black,* 767 F.2d 1334 (9th Cir.1985), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985).

■ Here, the trial court found that the police did not initiate, induce, or acquiesce in the alleged assault and the gun incident preceding the police interrogations. Thus, while the involvement of defendant's mother in his interrogation was highly unusual and we do not condone it, we conclude that the trial court did not err in finding her conduct relevant to the totality of circumstances surrounding defendant's statements, but in not treating her as a police agent.

Accordingly, the trial court did not err in admitting the defendant's statements.

## II.

However, we do agree with defendant's next contention that the trial court erred in excluding the testimony of defendant's expert witness at trial. We further conclude that such error was not harmless and requires a new trial.

The expert witness whom the defense sought to call was a psychologist who had interviewed defendant in February and April 1994. In early May 1994, after the pretrial suppression hearing at which defendant's statements were held to be voluntary, defendant endorsed the witness and trial was scheduled for May 16.

In granting the prosecution's motion to strike the endorsement of defendant's expert witness, the trial court stated two reasons: (1) the expert testimony was irrelevant; and (2) the testimony should be excluded as a sanction for defendant's failure timely to endorse the expert witness pursuant to Crim. P. 16.

### A. Relevancy

The reason emphasized by the trial court in rejecting defendant's expert testimony was that it went only to the voluntariness of defendant's statements. And because the voluntariness issue had already been decided adversely to defendant, the court viewed the expert testimony as irrelevant.

■ However, in *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), the United States Supreme Court faced a situation nearly identical to that before us. There, as here, a youthful defendant sought to introduce testimony regarding the physical and psychological environment surrounding his out-of-court confession. And there, as here, the trial court ruled the testimony inadmissible on the basis that it pertained solely to the issue of voluntariness.

In a unanimous opinion the Supreme Court reversed the conviction, holding that: (1) although the voluntariness issue had been determined by the trial court, defendant nevertheless had the right to present evidence to show the jury his confession, which was the principal component of the prosecution's case, was unworthy of belief; and (2) exclusion of the defendant's evidence about the circumstances of his confession deprived defendant of his constitutional right to a fair opportunity to present his defense.

We view *Crane v. Kentucky, supra,* as dispositive. Here, as in *Crane,* even though the issue of voluntariness had been ruled upon, defendant Lopez also had the constitutional right to a fair opportunity to persuade the jury that his statements to the police were not credible and should not be believed by them. His proffered expert psychological testimony should not have been excluded on the basis of relevancy because it was permissible evidence directly bearing on the reliability of his statements.

■ Contrary to the People's contention, *Deeds v. People,* 747 P.2d 1266 (Colo.1987) does not hold otherwise. There, our supreme court adopted the "orthodox rule" relating to the admissibility of confessions. Under this rule, when an accused asserts that his or her confession is involuntary, the trial court initially must conduct an *in camera* hearing to determine whether the confession was voluntarily given.

If the court concludes it was voluntary, the confession then is submitted to the jury "solely for consideration of the credibility of

the testimony relating to the confession and the weight to be given to the testimony and the confession." *Deeds v. People, supra,* 747 P.2d at 1272.

However, here, defendant requested and was denied an opportunity to present expert testimony relating to the circumstances surrounding his confession. Therefore, we conclude that the trial court erred in excluding defendant's expert testimony on the basis of relevancy. *See Crane v. Kentucky, supra.*

### B. Sanction for Violation of Discovery

An additional reason for excluding the expert witness given by the trial court was as a sanction for defendant's violation of a discovery rule. Defendant contends the sanction was without a proper basis because the court, in excluding the witness, considered the conduct of attorneys *in other cases.* We agree.

■ The exclusion of a key defense witness is a significant sanction materially affecting the trial. When fashioning sanctions for violations of discovery rules, the trial court is required to consider the following factors: (1) the reason for and the degree of culpability associated with the failure timely to respond to the prosecution's specification of time and place; (2) whether and to what extent the nondisclosure prejudiced the prosecution's opportunity effectively to prepare for trial; (3) whether events occurring after the defendant's noncompliance mitigate the prejudice to the prosecution; (4) whether there is a reasonable and less drastic alternative to preclusion of the defense evidence; and (5) any other relevant factors arising out of the circumstances of the case. *People v. Pronovost,* 773 P.2d 555 (Colo.1989); *see also People v. Richards,* 795 P.2d 1343 (Colo.App. 1989).

■ As justification for the sanction here, the trial court briefly stated that the proffered evidence was not relevant and also that:

the endorsement is exceedingly late ... [and] there seems to be some sort of thread amongst defense counsel, recently, over the last couple of months, of endorsing psychiatrists who fail and refuse to

prepare reports, and that's simply not going to happen.

In *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L. Ed.2d 798 (1988), the United States Supreme Court confronted a similar situation in which a trial court had excluded testimony of a defense witness because defense counsel had violated certain discovery orders. In so ruling, the trial court there made a comment almost identical to that made by the trial court in this case. It commented that:

[D]efense attorneys have been violating discovery in this courtroom in the last three or four cases blatantly and I am going to put a stop to it and this is one way to do so.

*Taylor v. Illinois, supra,* 484 U.S. at 405, 108 S.Ct. at 651, 98 L.Ed.2d at 808.

The Supreme Court disapproved the trial court's consideration of unrelated discovery violations occurring in other cases, explaining that:

The trial judge ... expressed concern about discovery violations in other trials. If those violations involved the same attorney, or otherwise contributed to a concern about the trustworthiness of [the witness's] 11th hour testimony, they were relevant. *Unrelated discovery violations in other litigation would not, however, normally provide a proper basis for curtailing the defendant's constitutional right to present a complete defense.*

*Taylor v. Illinois, supra,* (fn.22) (emphasis added).

Similarly, we hold that conduct by defense counsel in other trials, however objectionable, was an improper basis for the trial court's sanction for noncompliance with Crim. P. 16, and should not have been considered.

### C. Harmless Error

■ The presence of one or more invalid bases for a sanction does not require reversal if there is valid reason or reasons given by the court that would justify the sanction. Such is not the case here.

Before ordering the sanction and striking the expert witness, the trial court referred only to two impermissible factors: the erroneous conclusion that the expert testimony was irrelevant, and the objectionable conduct of defense attorneys in other cases. Because there is no other basis in the record for the sanctions, we conclude that the court erred in entering its order striking the expert testimony. *See People v. Pronovost, supra.*

Nor can the exclusion of the defendant's expert witness be viewed as harmless under these circumstances.

Here, defendant voluntarily initiated his interviews with the police just three days after his mother had confronted him and at gunpoint had threatened to kill him, herself, and his sister. The police interviews lasted for nearly 30 hours over the course of five days. The video tapes of such interviews show that defendant's mother actively participated in the interrogation, frequently trying to threaten or cajole him into cooperating with the investigating officer.

No eyewitnesses could place defendant at the scene of the crime at the time of the offense and testimony regarding defendant's whereabouts during the offense conflicted sharply. No blood was observed on defendant's person or clothing, despite the bloody crime scene. The only physical evidence linking defendant to the robbery, murder, and earlier second degree burglary was some jewelry which defendant assisted the police in recovering.

Further, defendant's mother testified on his behalf at trial and stated that she and defendant had planted the jewelry for the defendant "to find" for the police in order to inculpate the person whom defendant's mother believed had committed the murder. Thus, the reliability of the physical evidence depended on the credibility of defendant's confession.

Simply stated, defendant's confession was the core evidence supporting the prosecution's case and, in order to present a complete defense, he needed to challenge the credibility of his confession. Based on defendant's offer of proof, the expert testimony would have described the psychological environment in which he made the inculpatory statements. Absent such evidence, only the testimony of lay witnesses, who either were hostile to defendant or biased on his behalf, and defense counsel's closing arguments provided the jury with a basis on which to assess the psychological environment surrounding the interrogation, and to weigh the effect on defendant of the behavior of his mother and the interrogating officers. *Cf. State v. Bailey,* 90 Ohio App.3d 58, 627 N.E.2d 1078 (1992) (expert testimony needed regarding possible effects of childhood sexual abuse on the defendant's confession, defendant not qualified to express opinion on whether prior abuse rendered him submissive during interrogation).

We therefore conclude that the order excluding the defendant's expert testimony prevented defendant from presenting a complete defense. *See Crane v. Kentucky, supra; cf. Lanari v. People,* 827 P.2d 495 (Colo.1992), *appeal after remand, People v. Lanari,* 926 P.2d 116 (Colo.App.1996) (exclusion of defendant's expert witness did not deny him right to present heat of passion defense). We further conclude that, under these circumstances, exclusion of the expert testimony cannot be deemed harmless error and that a new trial is required.

The People assert that defendant's conviction for second degree burglary should be affirmed in any event because defense counsel admitted to the jury that, prior to the night of the murder, the defendant had burglarized his mother and step-father's home. According to the People, even if there were errors by the trial court, they do not affect this separate conviction. We do not agree.

### III.

The record shows that: (1)defendant had not been charged with any crimes until he made inculpatory statements during the interrogation; (2)his confession was the catalyst for the subsequent prosecution and the core evidence of the prosecution's case; (3)all charges against defendant were inextricably intertwined; (4)the defense hinged on defendant's ability to explain or discredit his inculpatory statements; and (5) had he been

allowed to present expert psychological testimony regarding his statement, his trial strategy may have been different and the jury may have reached a different verdict on some or all counts. For these reasons, we conclude the errors were prejudicial to defendant's entire case and necessitate a new trial on all counts.

Among issues that may arise on retrial is defendant's contention that the trial court abused its discretion in excluding evidence showing his alleged accomplice was not being prosecuted. We disagree.

■■■ Defendant sought to admit evidence that a *nolle prosequi* order had been entered regarding his accomplice and, therefore, that the accomplice was not being prosecuted for the murder and robbery. According to defendant, the *nolle prosequi* evidence would have supported an inference that he, the defendant, also had not participated in the offense, and likewise, should not have been prosecuted.

■■■ A *nolle prosequi* order is not the final disposition of a criminal case, but leaves the matter in the same condition as before charges were filed. *People v. Small,* 631 P.2d 148 (Colo.1981), *cert. denied,* 454 U.S. 1101, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981). Hence, the existence of such an order is not probative as to whether the accomplice was being investigated or prosecuted, and had no bearing on defendant Lopez' guilt or innocence.

We thus find no abuse of discretion in the trial court's exclusion of this evidence on the grounds of relevancy. *See People v. Lowe,* 660 P.2d 1261 (Colo.1983).

## IV.

Defendant also contends the trial court erred in instructing the jury regarding the elements of second degree burglary. We are not persuaded.

This burglary charge stemmed from events that occurred several months before the murder while defendant was living at the home of his mother and stepfather, and involved the removal of large amounts of money from a "stash" his stepfather kept hidden in the bedroom he shared with defendant's mother. Defendant was charged with second degree burglary for entering his parents' bedroom with the intent to take the money.

At trial, the jury was instructed that:

A general grant of authority or license to enter part of a building does not necessarily include the right to enter subunits or other parts of the building.

Defendant asserts that, because a dwelling consists of an entire building, the instruction used was not applicable. He argues that this instruction incorrectly states the law regarding an alleged burglary of a "dwelling" and applies only in cases relying on § 18–4–201(3), C.R.S. (1986 Repl.Vol. 8B) involving buildings which are "only partly open to the public." Under the circumstances here, we disagree.

■■■ A trial court has a duty to instruct the jury properly regarding every element of the charged offense, and its failure to do so is error. *Chambers v. People,* 682 P.2d 1173 (Colo.1984); *People v. Davis,* 935 P.2d 79 (Colo.App.1996).

Under § 18–4–203(1), C.R.S. (1986 Repl. Vol. 8B):

A person commits second degree burglary, if he knowingly breaks an entrance into, or enters, or remains unlawfully in a building or occupied structure with intent to commit therein a crime against a person or property.

Under § 18–1–901(3)(g), C.R.S (1986 Repl. Vol. 8B), a " '[d]welling' means a building which is used, intended to be used, or usually used by a person for habitation."

■■■ Here, although defendant had permission to live in the family home at the time of the burglary, his parents had a rule that none of the children was allowed in the parents' bedroom. Nevertheless, defendant secretly began stealing money from the hidden stash despite specific instructions that he was not authorized to enter the bedroom.

Courts in other jurisdictions have applied their burglary statutes to analogous situations in which a resident of a single family home makes an unauthorized entry into a locked bedroom of another resident. *See*

*State v. Cochran,* 191 Conn. 180, 463 A.2d 618 (1983); *see also Wesolic v. State,* 837 P.2d 130 (Alaska App.1992); *State v. Vowell,* 9 Haw.App. 307, 837 P.2d 1308 (1992); *People v. Smith,* 144 A.D.2d 600, 534 N.Y.S.2d 1021 (1988).

We agree with the reasoning of those decisions and conclude that the instruction was appropriate, and in a similar evidentiary posture, it would be proper on retrial. *See also People v. Nichols,* 920 P.2d 901 (Colo.App. 1996) (burglary occurred when inmate at county jail entered cell of another inmate without permission); *People v. Barefield,* 804 P.2d 1342 (Colo.App.1990) (janitor in public office building committed burglary when entering a locked office, which he was not authorized to enter, with intent to steal); *People v. Germany,* 41 Colo.App. 304, 586 P.2d 1006 (1978) (hospital room is a "dwelling" for purposes of burglary statute), *rev'd on other grounds,* 198 Colo. 337, 599 P.2d 904 (1979).

Defendant's remaining contentions are moot.

The judgment is reversed, and the cause is remanded for a new trial consistent with the views expressed in this opinion.

KAPELKE, J., concurs.

JONES, J., specially concurs.

Judge JONES specially concurring.

Although I concur with the majority that reversal is required, I disagree with the majority's holding that defendant's statements were properly admitted as being voluntarily made. Thus, I would reverse on this basis also and would direct that such statements be suppressed on retrial.

Extrajudicial statements may be admitted as evidence only if voluntarily given. If there is evidence of coercive or improper governmental influence, physical, mental, or emotional, that induced, or significantly affected, the defendant to make a confession or inculpatory statement, an essential predicate has been established for a finding of involuntariness. Such improper governmental influence may include violence, threats, implied or express promises, and different forms of physical abuse and psychological coercion. *People v. Gennings,* 808 P.2d 839 (Colo.1991).

Here, I believe the police employed what has been termed the "crude chicanery of employing [a person] intimate with an accused, to play on his emotions...." *Culombe v. Connecticut,* 367 U.S. 568, 630, 81 S.Ct. 1860, 1894, 6 L.Ed.2d 1037, 1074 (1961). This practice has been strongly deplored. *See People v. McIntyre,* 789 P.2d 1108 (Colo. 1990); *People v. Freeman,* 668 P.2d 1371 (Colo.1983).

It is even more deplorable a practice under the circumstances here in which the record shows that: 1) there was no physical evidence linking defendant to the crimes; 2) the police conducted nearly 30 hours of interviews with defendant over the course of five days; 3) during those interviews, the police displayed a grotesque photograph of the dead victim to the defendant; 4) prior to these interviews, the person with whom defendant had a familial relationship, *i.e.,* his mother, had held a gun to defendant's head and had threatened that he was "going to die" if he did not confess to killing the victim; 5) thereafter, defendant's mother collaborated with the police, planning, consulting, and being physically present with them during the interrogation so as to induce him to give statements admitting his involvement in the offenses.

Under these circumstances, I conclude that his mother's active participation in the interrogations transformed her into an agent of the state, and that the factors set forth in *Gennings* that show improper coercive impact were present. Thus, I would hold that the inculpatory statements made by defendant over the many hours of interrogation were involuntary, *see Culombe v. Connecticut, supra,* and, therefore, they are inadmissible at his new trial.