The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Larry G. FLIPPO, Defendant–Appellant.

No. 02CA1831.

Colorado Court of Appeals, Div. III.

Aug. 25, 2005.

Rehearing Denied Oct. 13, 2005.

Certiorari Granted May 30, 2006.*

438

John W. Suthers, Attorney General, Matthew S. Holman, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

KAPELKE **, J.

Defendant, Larry G. Flippo, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of sexual assault. We reverse and remand for a new trial.

The victim became acquainted with defendant through a telephone dating service. She later traveled from Denver to Greeley with her two children and a friend to visit defendant.

According to the prosecution's evidence, at one point defendant asked the victim to go into his bedroom with him. The victim agreed. She then brought her children into the bedroom with her and told defendant she only wanted to talk. Defendant began kiss-

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2004.

ing her. The victim pushed defendant away and told him to stop. According to the victim, defendant later pulled up her skirt and tore her underwear, she again told him to stop, and defendant thereafter penetrated her both digitally and with his penis.

When the victim returned to Denver, her friend called an ambulance, and the victim was taken to the hospital.

The police later recorded a telephone conversation between the victim and defendant during which defendant apologized to the victim for what he had done.

The next afternoon, two detectives and a police officer went to defendant's apartment. One of the detectives told defendant they wanted to talk to him and asked him to walk with them to the police station, which was two blocks away.

When they arrived at the station, the first detective took defendant to an interrogation room, where he informed defendant that he was not under arrest and was free to go at any time. Defendant was not given an advisement under *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Initially, defendant told the detective he had had consensual sexual intercourse with the victim. A few minutes into the interview, the detective left the room and then returned about a minute later. Shortly thereafter, the police officer entered the room with a cassette tape, which he indicated was the recording of defendant's phone conversation with the victim. The officer accused defendant of raping the victim. Defendant denied the accusation. Later, after the officer left the room, defendant admitted to the detective that he had raped the victim. When defendant asked whether he could leave, the detective told him he was under arrest.

The police later took defendant to a hospital for a blood draw and then back to the police station for a sexual assault kit. A police investigator explained the procedure to defendant. Defendant asked the investigator some questions, which the officer answered, and in the course of the conversation defendant made further admissions.

Upon his conviction, defendant was sentenced to an indeterminate term of eight years to life.

### I.

▮ Defendant contends that the court erred in excluding expert testimony concerning his developmental disability. We agree.

▮ Trial courts are generally afforded considerable discretion in determining the admissibility of evidence. *People v. Ibarra,* 849 P.2d 33 (Colo.1993). Absent an abuse of that discretion, a trial court's evidentiary rulings will be affirmed. *People v. Quintana,* 882 P.2d 1366 (Colo.1994). To demonstrate an abuse of discretion, a defendant must show that the trial court's decision to reject the proffered evidence was manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra, supra.*

Here, prior to trial, the prosecution filed a motion in limine to preclude defendant from presenting evidence of insanity or impaired mental condition. The prosecution argued that because defendant had not raised a defense of insanity or impaired mental condition by specific plea at the time of his arraignment, pursuant to §§ 16–8–103 and 16–8–103.5, C.R.S.2004, he had waived the right to assert such a defense absent a showing of good cause.

Defendant responded that he was not asserting a defense based on insanity or impaired mental condition, nor was he contending he was incapable of forming the required culpable mental state. Rather, he was seeking to adduce evidence of his development disability only as to the issue of the credibility of his statements to the detectives and his statements made to the victim in the taped telephone conversation. Accordingly, defendant argued that §§ 16–8–103.6 and 16–8–107(3), C.R.S.2004, which concern waiver of the defenses and exclusion of evidence of mental condition, were inapplicable.

By separate motion, defendant requested the trial court to declare that §§ 16–8–103(4), 16–8–103.6(2)(a), 16–8–106, and 16–8–107, C.R.S.2004, are unconstitutional.

At a pretrial hearing, defense counsel indicated that she intended to call three expert

witnesses—two psychologists and a social worker—to testify regarding defendant's developmental disability. The court ruled preliminarily that it would not allow evidence of defendant's mental status at trial and also would not allow testimony by the social worker regarding defendant's low I.Q. The court went on to suggest, however, that the admissibility of the expert witness testimony could be considered at trial.

In a later written order, the trial court determined that the proffered expert testimony was inadmissible, rejecting defendant's argument that §§ 16–8–103.6 and 16–8–107(3) were inapplicable. The court stated: "Whether or not mental retardation is evidence of *impaired mental condition,* the court concludes that mental retardation is a *mental condition,* within the meaning of § 16–8–107(3)." The court also determined that defendant had not provided a sufficient offer of proof to support admission of the proffered evidence for any other purpose. In addition, the court denied defendant's motion to have the statutes declared unconstitutional.

Defendant thereafter filed an "objection" to the court's ruling, in which he asserted, among other points, that the testimony given by the social worker at a previous hearing in the case constituted an adequate offer of proof to apprise the court of the content, relevancy, and purpose of the anticipated expert trial testimony. At the previous hearing, the social worker had testified that persons with developmental disabilities are generally more suggestible and may tend to give responses calculated to please persons who are in positions of authority.

### A. Applicability of § 16–8–107(3)

Section 16–8–107(3)(b), C.R.S.2004, provides, in relevant part:

> Regardless of whether a defendant enters a plea of not guilty by reason of insanity pursuant to section 16–8–103, the defendant shall not be permitted to introduce evidence in the nature of expert opinion concerning his or her mental condition without having first given notice to the court and the prosecution of his or her intent to introduce such evidence and without having undergone a court-ordered examination pursuant to section 16–8–106. . . . Such notice shall be given at the time of arraignment; except that the court, for good cause shown, shall permit the defendant to inform the court and prosecution of the intent to introduce such evidence at any time prior to trial.

Here, defendant concedes that he did not raise either an insanity defense or an impaired mental condition defense at his arraignment or at any time thereafter. Nor did he provide notice at the time of his arraignment that he intended to introduce evidence related to his mental condition or comply with the requirement in § 16–8–107(3)(b) for a court-ordered examination pursuant to § 16–8–106. Accordingly, defendant does not dispute that expert testimony concerning his "mental condition," as that term is used in § 16–8–107(3)(b), would have been inadmissible at trial. The pivotal issue, however, is whether the expert opinion evidence defendant sought to present about his developmental disability and its effect on the reliability of his inculpatory statements constitutes "mental condition" evidence within the meaning of § 16–8–107(3)(b). We conclude that it does not.

The purpose of the proffered opinion testimony was not to establish an insanity or impaired mental condition defense or to support a claim by defendant that he lacked the requisite mens rea for conviction of the charged offense. Rather, its stated purpose was to challenge the credibility and weight of the evidence of the inculpatory statements defendant made to law enforcement officers and to the victim. Specifically, defendant sought to show that by reason of his developmental disability, he was highly susceptible to suggestion, especially by persons of authority.

In *People v. Requejo,* 919 P.2d 874 (Colo. App.1996), the defendant, who was charged with assault on a complicity theory, sought to introduce expert testimony of his mental retardation in aid of his defense that he had not noticed that his friend had pulled out a knife and begun stabbing the victim while defendant was holding him. As in this case, the prosecution in *Requejo* had filed a motion

in limine to preclude the expert testimony regarding the defendant's mental retardation on the basis that the defendant had not pled the affirmative defense of impaired mental condition. The trial court granted the motion.

On appeal, a division of this court reversed, concluding that the trial court's ruling was erroneous and that the exclusion of the proffered evidence was not harmless. The division determined that evidence of the defendant's mental retardation was not evidence of impaired mental condition within the meaning of § 16–8–107.

As the People point out, § 16–8–107 has been amended since *Requejo.* We disagree, however, with the People's assertion that the statute, as amended, applies here.

Subsection (3) of § 16–8–107 was added by the General Assembly in 1999 as part of an act "concerning criminal cases in which the defendant raises his or her mental state as a defense." *See* Colo. Sess. Laws 1999, ch. 137 at 401. Where, as here, the defendant does *not* raise mental state as a defense or to show lack of the required mens rea, but, instead, merely seeks to use evidence of his developmental disability or retardation to challenge the credibility and reliability of his inculpatory statements, we conclude that § 16–8–107 does not apply.

In *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), the United States Supreme Court recognized that a defendant is entitled to present evidence of the circumstances of his or her confession, as bearing on its credibility and reliability, and that exclusion of such evidence violates the defendant's right to a fair trial. *See also People v. Lopez,* 946 P.2d 478 (Colo.App. 1997) (holding that, under *Crane,* juvenile defendant was entitled to present expert witness evidence regarding circumstances of his confession).

In *Hannon v. State,* 84 P.3d 320 (Wyo. 2004), the Wyoming Supreme Court, relying on *Crane v. Kentucky,* held that the trial court committed reversible error by excluding expert psychological testimony regarding the defendant's low I.Q. in order to show the circumstances of his interrogation and to challenge the credibility of his incriminatory statements. The court stated:

> As was said in *Crane,* the constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. An essential component of procedural fairness is an opportunity to be heard. That opportunity is denied where competent reliable evidence bearing on the voluntariness of a confession is excluded, particularly where the defendant's only avenue of defense is to show the confession is false.

*Hannon v. State, supra,* 84 P.3d at 351.

We agree with the analysis in *Hannon* and conclude that the trial court erred here in excluding the expert testimony of defendant's developmental disability as barred by § 16–8–107(3).

Further, we disagree with the People that the trial court acted properly in excluding the expert opinion testimony concerning defendant's developmental disability on the basis that he had failed to make an adequate offer of proof. The purpose of the expert opinion evidence was adequately set forth in defendant's response to the prosecution's motion in limine, as well as in defense counsel's argument to the trial court. Further, as defendant pointed out to the court, at the prior hearing the social worker had already testified as to the suggestibility of developmentally disabled persons and, specifically, as to the possible effect of such suggestibility on defendant's responses during police interrogation.

Finally, we note that the trial court had initially indicated that the admissibility issue would be considered at trial, but the court thereafter made its pretrial ruling excluding the evidence without having given defendant the opportunity to provide any further offer of proof concerning the purpose and content of the anticipated expert testimony. We thus conclude that the trial court erred in excluding evidence of defendant's developmental disability.

### B. Harmless Error Analysis

 Under the circumstances here, we cannot say that the court's exclusion of the expert opinion testimony was harmless error.

In *People v. Lopez, supra,* a division of this court held that the trial court's improper exclusion of expert opinion testimony concerning the circumstances surrounding the juvenile defendant's confession was not harmless error. Citing *Crane v. Kentucky, supra,* the division emphasized that the defendant "had the constitutional right to a fair opportunity to persuade the jury that his statements to the police were not credible and should not be believed." The division pointed out that the defendant's proffered expert psychological testimony "was permissible evidence directly bearing on the reliability of his statements." *People v. Lopez, supra,* 946 P.2d at 482.

Here, as in *Lopez,* the defense hinged in large part on defendant's "ability to explain or discredit his inculpatory statements," and the trial court's ruling excluding the expert opinion testimony prevented defendant from presenting a complete defense. *See People v. Lopez, supra,* 946 P.2d at 484; *see also Hannon v. State, supra.*

We therefore conclude that the judgment of conviction must be reversed and the case remanded for a new trial.

In light of our determination, we need not address defendant's additional contention concerning the constitutionality of §§ 16-8-103(4), 16-8-103.6(2)(a), 16-8-106, and 16-8-107. Nor do we address his contention that the trial court abused its discretion in denying his challenges for cause to two prospective jurors.

Because it may arise on remand, however, we will address defendant's contention that the trial court erred in denying his motion to suppress.

## II.

Defendant maintains that the trial court erred in denying his motion to suppress statements he made during his interview at the police station and following his arrest. We disagree.

■ Statements made during custodial interrogation are admissible at trial only if the person making them "has already been properly advised concerning his right to remain silent and his right to have a lawyer, and if he has made a voluntary, knowing, and intelligent waiver of those rights." *People v. Rivas,* 13 P.3d 315, 318 (Colo.2000). Thus, for a suspect's statement to be admissible, the police are required to give *Miranda* warnings prior to questioning the suspect when he has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda, supra,* 384 U.S. at 444, 86 S.Ct. at 1612. "If a person in custody is not properly apprised of these rights, or fails to make a knowing and intelligent waiver of those rights, the prosecution may not introduce any statement procured from the custodial interrogation in [its] case in chief." *People v. Howard,* 92 P.3d 445, 449 (Colo.2004).

■ To ascertain whether a statement is subject to the requirements of *Miranda,* the court must determine (1) whether the person making the statement was in custody; and (2) whether the statement was obtained as a product of police interrogation. *People v. Haurey,* 859 P.2d 889 (Colo.1993).

■ Further, a statement obtained from a defendant is admissible only if it was voluntary. *People v. DeBaca,* 736 P.2d 25 (Colo.1987). In determining whether a statement is voluntary, the court must consider the totality of the circumstances surrounding the statement. *People v. Klausner,* 74 P.3d 421, 425 (Colo.App.2003).

■ A reviewing court defers to the trial court's factual findings that have competent record support, but makes de novo the ultimate legal determination whether a statement was voluntary. *See People v. Owens,* 97 P.3d 227 (Colo.App.2004).

### A. Statements to the Detective

■ Defendant asserts that the trial court erred in denying his motion to suppress the statements he made to the detective at the police station. He maintains that he was in custody and that his statements were thus obtained in violation of *Miranda.* We disagree.

■ To determine whether a defendant was in custody when a statement was

made, we look to whether "a reasonable person in the defendant's position 'would believe that his freedom of action had been curtailed to a degree associated with formal arrest."' *People v. Minjarez*, 81 P.3d 348, 353 (Colo.2003)(quoting *People v. Matheny*, 46 P.3d 453, 464 (Colo.2002)). In making this determination, we look to the totality of the circumstances under which the questioning occurred, including the following:

> the time, place, and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; any limitation of movement or other form of restraint placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; any directions given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*People v. Wallace*, 97 P.3d 262, 266 (Colo. App.2004).

Here, the trial court found, with record support, that defendant voluntarily walked to the police station; that he was responsive to the detective's questions; that defendant's statement to the detective was made "freely" and "intelligently"; and that "defendant's question at the conclusion of the interview, 'Am I free to go?' was neither sarcastic [n]or rhetorical, but was a recognition on his part that he might still be free to go."

Under the circumstances, we agree with the trial court that a reasonable person in defendant's position would not have believed, at the time of questioning, that "his freedom of action had been curtailed to a degree associated with formal arrest." *See People v. Minjarez, supra*, 81 P.3d at 353. Accordingly, we conclude that defendant was not in custody under *Miranda*.

### B. Statements to the Officer

██ Defendant contends the trial court should have suppressed the statements he made to the officer who supervised the collection of the sex assault kit. Specifically, he maintains that the statements were the product of interrogation while he was indisputably in custody. We disagree that the statements were the product of interrogation.

██ "Interrogation" refers to express questioning as well as words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response. *People v. Taylor*, 41 P.3d 681 (Colo.2002); *see People v. Vigil*, 104 P.3d 258 (Colo.App.2004)(*cert. granted* Dec. 20, 2004).

Here, the officer testified that he did not question defendant while supervising the collection, but rather, merely answered defendant's questions as to what would happen to him and who would testify against him. Thereafter, defendant offered unsolicited statements about what he had done. Because the officer's conduct does not amount to interrogation, the court's ruling was proper. *See People v. Sharpless*, 807 P.2d 590, 591 (Colo.1991) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980): "[A]ny statement given freely and voluntarily without compelling influences is ... admissible .... Volunteered statements of any kind are not barred by the Fifth Amendment."); *People v. Rivas, supra*, 13 P.3d at 319–20 ("Even in the face of a clear request by a suspect in custody for permission to make what is likely to be an incriminating statement, police reaction by either granting permission or remaining silent does not necessarily constitute interrogation.").

### C. Voluntariness of Statements

Defendant next argues that the statements he made during the videotaped interview with the detective and the statements he later made to the police officer were involuntary. We disagree.

██ A statement is involuntary if coercive governmental conduct played a significant role in inducing it. *People v. Valdez*, 969 P.2d 208, 211 (Colo.1998). The question is essentially whether the coercive governmental conduct has overborne the individual's free will. *Valdez, supra*, 969 P.2d at 211. Relevant factors to consider include:

> whether the defendant was in custody or was free to leave and was aware of his situation; whether Miranda warnings were given prior to any interrogation and

whether the defendant understood and waived his Miranda rights; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment status, and prior experience with law enforcement and the criminal justice system.

*Valdez, supra,* 969 P.2d at 211 (quoting *People v. Gennings,* 808 P.2d 839, 844 (Colo. 1991)).

After considering the testimony concerning defendant's statements, the trial court found that all the statements were made voluntarily. The record supports this conclusion. Accordingly, the trial court did not err in denying defendant's motion to suppress.

The judgment of conviction is reversed, and the case is remanded for a new trial.

Judge CASEBOLT and Judge DAILEY concur.