**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 6, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN E. LOPEZ,

      Petitioner-Appellant,

v.

CARL ZENON; JOHN W. SUTHERS,
the Attorney General of the State of
Colorado,

      Respondents-Appellees.

No. 10-1032

(D.C. No. 04-cv-01072-ZLW-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **TACHA,** and **O'BRIEN**, Circuit Judges.

---

      Petitioner John E. Lopez, a Colorado state prisoner convicted of first

degree murder and robbery and sentenced to life imprisonment without parole,

appeals the district court's denial of his 28 U.S.C. § 2254 petition for federal

habeas relief. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**I**

      The background facts were succinctly summarized by the Colorado Court

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is,
therefore, submitted without oral argument.

of Appeals (CCA) in Lopez's direct appeal:

> In March 1993, [Lopez's] stepfather was beaten and stabbed to death in the bedroom of his home. A safe containing an estimated $170,000 in cash and jewelry was taken from the home during the attack. No other valuables were removed.
>
> [Lopez] and a friend of his were immediate suspects and [Lopez] was first questioned about the crime in March 1993. Although police lacked sufficient evidence to make an arrest, [Lopez's] mother remained in contact with the investigating officer, urging him to solve the murder. The officer told her that [Lopez] and his friend were involved in the crime, but that the police lacked evidence to arrest them.
>
> In a bizarre series of events, [Lopez's] mother became entangled in the case against [him]. In July 1993, she allegedly assaulted him in the parking lot of a grocery store. Two days later she went to see him, held a loaded gun to his head, and threatened to kill him, herself, and his younger sister unless he went to the police to talk to the investigating officer. That visit occurred on a Friday and she gave him until Sunday to agree to her ultimatum.
>
> The following Monday [Lopez] appeared at the police station. He was interrogated there about the murder that day and he also left and returned every day during the next four days for further interrogation. Not only was [Lopez's] mother present at the interrogations, but she actively assisted in questioning [him].

People v. Lopez, 946 P.2d 478, 480 (Colo. App. 1997). The interviews lasted approximately thirty hours over five days, from July 12 through July 16. Lopez was repeatedly advised of his constitutional rights throughout the interviews, and he signed waiver of rights forms. On the second day, the investigating officer showed Lopez a graphic photograph of his deceased stepfather, and Lopez became visibly upset. On the third day, he changed his statement, and on the fourth and fifth days of the interviews, he made statements implicating himself in the theft and his stepfather's murder. On July 21, 1993, Lopez was charged with one count

2

of first degree felony murder, two counts of second degree burglary, two counts of theft, and one count of robbery.

The state trial court denied Lopez's motion to suppress the incriminating statements. In so doing, that court found that Lopez's mother was not acting as a government agent, and that his statements to the police were voluntary. Lopez was convicted on all counts, except one count of burglary and one count of theft.

Lopez appealed his convictions, arguing in part that his statements during the police interview were involuntary and should not have been admitted at trial. The CCA agreed with the trial court that Lopez's mother was not a government agent, but nonetheless considered her conduct during the interrogation as "relevant to the totality of the circumstances surrounding [his] statements" in determining the voluntariness of those statements. Id. at 482. Although the CCA concluded his statements were voluntary, it nonetheless reversed the murder, theft, burglary, and robbery convictions because the trial court erred in excluding expert testimony, and it remanded for a new trial. Judge Jones, writing separately, would have "conclude[d] that [Lopez's] mother's active participation in the interrogations transformed her into an agent of the state," and would have further held "that the inculpatory statements made by [Lopez] over the many hours of interrogation were involuntary . . . ." Id. at 486 (Jones, J., concurring). The Colorado Supreme Court denied certiorari.

Upon remand, Lopez pleaded guilty to one count of second degree burglary

3

and one count of theft, and he was retried on the remaining charges of first degree murder and robbery. At trial, his statements were the primary evidence against him. He was convicted of the remaining charges and sentenced to life imprisonment without parole. This conviction was affirmed by the CCA, and the Colorado Supreme Court denied certiorari on April 23, 2001.

On October 31, 2001, Lopez sought post-conviction relief in state court. The state district court denied post-conviction relief, and the CCA affirmed the decision. The Colorado Supreme Court denied certiorari on January 20, 2004.

On May 14, 2004, Lopez filed a petition for federal habeas corpus relief under 28 U.S.C. § 2254. The district court granted Lopez's request for appointment of counsel, and counsel filed an amended petition. In the amended petition, Lopez contended that his statements were involuntary and used against him at trial in violation of the Fifth and Fourteenth Amendments.[1]

The magistrate judge recommended that Lopez's petition be denied. The district court subsequently denied Lopez's request for an evidentiary hearing, adopted the magistrate judge's recommendation, and denied Lopez's petition. First, the district court agreed with the state court that Lopez's mother was not acting as an agent of the government during the interrogation. The district court

---

[1] The amended petition also presented a claim that Lopez was actually innocent. The magistrate judge noted that this claim did not appear to be exhausted, and Lopez was permitted to withdraw this claim.

further concluded that even assuming that she was a government agent, her conduct during the interrogation was not unconstitutional, reasoning that "there is no evidence that [Lopez's] will was overborne by [his mother's] behavior or that his statements were the product of her pointed and heated discussions toward [sic] him." ROA, Vol. III at 397 (quotations omitted). Second, the district court concluded that the state court's decision regarding the voluntariness of Lopez's statements was not an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. The district court further reasoned that no police conduct coerced Lopez, and noted that even after he was shown the "grisly photograph" of his stepfather, he "returned to his previous cool, calm, and collected demeanor within a short period of time." Id. at 398. Moreover, his "story did not change the remainder of that day of questioning . . . . Whatever reaction the photos elicited, [his] will was not overcome in the immediate aftermath of the viewing." Id.

Lopez filed a timely notice of appeal, request for a certificate of appealability ("COA"), and opening brief. On June 15, 2010, we granted a COA and directed respondents to file a response brief, which we have now received. Lopez has also filed a reply.

## II

In an appeal from the denial of habeas relief under 28 U.S.C. § 2254, our scope of review is governed by the Antiterrorism and Effective Death Penalty Act

5

of 1996 (AEDPA). Where, as here, the state court addressed a petitioner's claims on the merits, habeas relief may be granted only if the CCA's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).

We may grant habeas relief "only when we are convinced the state court's application of federal law goes beyond being erroneous and instead becomes objectively unreasonable." Snow v. Sirmons, 474 F.3d 693, 696 (10th Cir. 2007). An objectively unreasonable application of federal law is more than a merely incorrect application of clearly established federal law. Id. (citing Willams v. Taylor, 529 U.S. 362, 411 (2000)). As we have previously recognized, "objective unreasonableness is somewhere between clearly erroneous and unreasonable to all reasonable jurists." Maynard v. Boone, 468 F.3d 665, 670 (10th Cir. 2006) (emphasis omitted). "Thus, only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." Id. at 671.

We begin by examining the clearly established federal law, as determined by the Supreme Court, which is relevant to his claim. Under AEDPA, we may not "extract clearly established law from the general legal principles developed in factually distinct contexts." House v. Hatch, 527 F.3d 1010, 1016 n.5 (10th Cir. 2008). On the other hand, an unreasonable application of federal law may occur

6

if a state court "unreasonably refuses to extend [a legal] principle to a new context where it should apply." Williams, 529 U.S. at 407.

In his amended petition for habeas relief, Lopez argued that his statements were involuntary, and therefore, used against him at trial in violation of his due process rights pursuant to the Fifth and Fourteenth Amendments. Mincey v. Arizona, 437 U.S. 385, 398 (1978). In determining whether a statement was involuntary, we look to the totality of the circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Moreover, police conduct must be "causally related to the confession," in order to find a denial of due process of law. Colorado v. Connelly, 479 U.S. 157, 164 (1986).

Lopez further contended that under Coolidge v. New Hampshire, 403 U.S. 443 (1971), his mother acted as an agent of the police during the interrogation, and that she improperly pressured Lopez into making the incriminating statements. Respondents argue that Coolidge does not constitute clearly established law applicable to this case. In particular, they argue that Coolidge's test for whether a private actor must be regarded as a government agent was decided "in the context of the Fourth Amendment — not the Fifth Amendment . . . ." Appellees' Br. at 13. However, we need not decide whether Coolidge is clearly established federal law for this case.[2] Even assuming, arguendo, that

_____

[2] Indeed, we note that the CCA applied the Coolidge test to determine

(continued...)

7

Lopez's mother could be considered a government agent during the interrogation, Lopez would not be entitled to habeas relief.[3]

The CCA affirmed the trial court's conclusion that "although coercive techniques were used at various points in the interrogation, [Lopez's] final statements regarding his role in the offenses nevertheless were voluntary and did not result from coercive police tactics." Lopez, 946 P.2d at 481. Lopez argues that the police and his mother pressured him during the first two days of the interrogation. For example, the investigating officer began the first interview by noting that his mother had been "goin' through some hell. And she's gettin' to the point where she's homicidal/suicidal." ROA, Vol. II, Tr. at 1. Additionally, his mother was very active in asking Lopez questions during the first two days of the interview. Lopez also contends that the police coerced him to confess on the second day of the interrogation by showing him a photograph of his deceased stepfather. We are not persuaded that the CCA unreasonably applied federal law in concluding that Lopez's statements were uncoerced.

---

[2](...continued) "whether a private citizen has acted as an agent of the police for purposes of criminal investigation . . . ." Lopez, 946 P.2d at 481. Although the CCA concluded that Lopez's mother was not a government agent, that court nevertheless "conclude[d] that the trial court did not err in finding her conduct relevant to the totality of the circumstances surrounding [Lopez's] statements . . . ." Id. at 482.

[3] Accordingly, we do not address Lopez's argument that the district court abused its discretion in denying his request for an evidentiary hearing to explore the interactions between the investigating officer and Lopez's mother.

Here, the allegedly coercive conduct occurred during the first two days of the interviews. The record indicates that Lopez's mother was active in the interview during the first few days of the interrogation, on July 12 and 13. Additionally, Lopez was shown the photograph of his deceased stepfather on the second day of the interview, July 13. However, he did not make an incriminating statement until the next morning, on July 14. See Newland v. Hall, 527 F.3d 1162, 1190 (11th Cir. 2008) (over 24 hours passed between allegedly coercive police statements and confession). On July 14, after again voluntarily returning to the police station, and again being advised of his constitutional rights under Miranda, he waived those rights and spoke freely, in great detail and without questioning or even comment from his mother. Moreover, after leaving the police station at the end of each day of interviews, he stayed at his grandmother's house.[4] In addition to considerable breaks between the coercive conduct and his eventual statement, the videotapes of the interrogation show that he remained calm and collected throughout most of the interviews, including when he made his statements on July 14. Even after he was shown the photograph of his stepfather, he was at first visibly upset, but then he "returned to his previous cool, calm, and collected demeanor within a short period of time," ROA, Vol. III at 398. Indeed,

---

[4] Lopez asserts that his mother "never ceased her manipulative tactics in the evening." Appellant's Reply Br. at 7. However, Lopez does not offer any evidence or support for this assertion, nor does he even explain what these allegedly manipulative tactics were.

until July 14 he maintained his original story that he had no memory of what happened. See Newland, 527 F.3d at 1190 (noting that petitioner maintained his "no-memory claim" for the remainder of the interrogation with the officer who made allegedly coercive statements). Under these circumstances, the CCA reasonably concluded that Lopez's statement was not the product of police coercion.

Further, the CCA reasonably concluded that Lopez's statements were voluntary under the totality of the circumstances. At the time of the interviews, Lopez was eighteen years old and had satisfied the GED or its equivalent. Throughout the interview, he was repeatedly reminded of his constitutional rights and told that he was free to leave at any time. During most of the interview, Lopez appeared calm and collected, including when he made the incriminating statements. Looking to the totality of the circumstances, we cannot conclude that the CCA was objectively unreasonable in applying clearly established federal law.

Accordingly, we AFFIRM the judgment of the district court.

Entered for the Court

Mary Beck Briscoe
Chief Judge

10