### The PEOPLE of the State of Colorado, Petitioner

v.

### Larry G. FLIPPO, Respondent.

### No. 05SC794.

Supreme Court of Colorado, En Banc.

May 21, 2007.

As Modified on Denial of Rehearing June 11, 2007.*

---

* Justice Eid does not participate.

John W. Suthers, Attorney General, Matthew S. Holman, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Petitioner.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' determination that "mental condition," as used in section 16–8–107(3)(b) of the Colorado Revised Statutes, does not include the defendant's intellectual disabilities.[1] Section 16–8–107 describes the procedures that a defendant must follow when introducing expert testimony placing his mental condition at issue in trial. The defendant attempted to introduce expert testimony at trial that, due to his intellectual disability, he was highly suggestible under interrogation. He did not comply with the statutory requirements of section 16–8–107(3)(b). The trial court excluded his proposed expert testimony finding that it was "mental condition" evidence subject to the statute. It also excluded his proposed lay opinion testimony regarding his suggestibility. The court of appeals disagreed and held that the statute did not apply, ordered a new trial, but did not reach his challenge to the exclusion of the lay opinion testimony. *People v. Flippo,* 134 P.3d 436 (Colo.App.2005). We now reverse and remand for consideration of the remaining issues not addressed by the court of appeals.

The meaning and scope of the phrase "mental condition" is neither defined by the statute nor apparent from the statutory context. However, the statutory language in subsection 16–8–107(3)(b) describes "mental condition" evidence as a category of expert testimony that includes more than just evidence of a defendant's sanity. Within that category is expert testimony offered to explain how a defendant's intellectual disability affects the reliability or credibility of statements made to the police. Therefore, the trial court properly held that the defendant's proposed expert testimony was subject to the statute's procedural requirements.

## I. Facts and Procedural History

Larry Flippo ("Flippo") was convicted at trial of felony sexual assault.[2] The evidence presented at trial included statements made by Flippo directly to the police during a videotaped interrogation. Before trial, Flippo challenged the admissibility of those statements as the product of an involuntary confession. The judge ruled his statements voluntary and the videotape admissible. Flippo then requested that the court allow him to introduce testimony at trial about his intellectual disability[3] for the purpose of challenging the credibility of his statements made to the police. Flippo endorsed three experts to testify about his intellectual disability and its effect on the reliability or credibility of the statements he gave to police. In response, the prosecution filed a motion in limine to exclude such evidence.

1. The issues on which we granted certiorari are:
 1. Whether section 16–8–107(3)(b), C.R.S. (2005), which requires notice and a court-ordered examination before a defendant may introduce expert opinion evidence concerning his or her mental condition, applies regardless of the purpose for which the evidence is admitted.
 2. Whether the court of appeals incorrectly held that section 16–8–107(3)(b) only applies when a defendant offers expert opinion evidence concerning his mental condition as a defense or to show a lack of a required mens rea, although the statute contains no such limiting provision.
 3. If the trial court erred in preventing the respondent from presenting evidence of his mental condition, was such error harmless.

2. He was convicted in 2002 under section 18–3–402(1)(a), C.R.S. (2002).

3. According to pre-trial testimony, Flippo has an I.Q. of approximately 68. He was described as being mildly retarded. The term "retarded," though widely used, has been replaced with "intellectual disability," a term we adopt here. *See* Press Release, American Association on Intellectual and Developmental Disabilities (formerly American Association on Mental Retardation), Mental Retardation Is No More—New Name Is Intellectual and Developmental Disabilities (Feb. 20, 2007), http://www.aaidd.org/About_AAIDD/MR_name_change.htm.

The trial court held a hearing in which a social worker testified and scientific and legal journal articles were introduced together with the resumes and proposed testimony of the other two experts.

The substance of the proposed expert testimony, supported by the literature, was that people with intellectual disabilities are more suggestible in a police interview than a person without those disabilities and that they will agree with statements made by the police, even if those statements are not true.[4] The purpose of the proposed evidence was to undermine the reliability and credibility of Flippo's statements on a videotape showing officers making incriminating statements ending with "Correct?" to which Flippo would agree. The social worker testified that Flippo had an intellectual disability and he also "idealized" police officers. She expressed concern that during the interrogation, Flippo gave incriminating responses he thought would satisfy the police officers.

The prosecution argued that Flippo was required to give notice of his proposed evidence at arraignment and submit to a court-ordered evaluation pursuant to both section 16–8–103.5 (controlling the procedure for raising impaired mental condition as an affirmative defense) and section 16–8–107(3)(b).[5] Flippo argued that an intellectual disability is not a "mental condition" for purposes of section 16–8–107(3)(b) and thus the procedural

requirements should not apply. The trial court ruled that "mental retardation is a *mental condition* ... within the meaning of [section] 16–8–107(3)." The court then found that Flippo had not given notice at arraignment of his intent to introduce expert testimony.[6] The court also held that Flippo's proposed expert testimony would not be relevant or helpful to the jury under CRE 702 (admissibility of expert testimony) and therefore Flippo would not be allowed to present any expert evidence of his I.Q. at trial.

During the trial, Flippo attempted to introduce lay opinion testimony regarding his suggestibility. The testimony would have come from the same social worker who testified at the pretrial hearing and Flippo's mother. The trial court determined that testimony about whether Flippo was suggestible enough to give an unreliable confession would require expert testimony. Because the court had already excluded all expert testimony, the lay opinion testimony was also excluded. The court thereby precluded all evidence at trial attacking the reliability or credibility of Flippo's confession based on his susceptibility to suggestion. As a result, Flippo's disability was never discussed at trial nor mentioned during closing arguments. Flippo was convicted by a jury and pursuant to the sex offender sentencing statutes, given an indeterminate sentence of eight years to life. Flippo appealed.

---

4. This theory is supported by more recent literature on the subject. *See* Solomon Fulero & Caroline Everington, *Assessing the Capacity of Persons with Mental Retardation to Waive Miranda Rights: a Jurisprudent Therapy Perspective,* 28 Law & Psychol. Rev. 53 (2004).

5. Section 16–8–107(3)(b), C.R.S. (2006) reads:

 *Regardless of whether* a defendant enters a plea of not guilty by reason of insanity pursuant to section 16–8–103, the defendant *shall not be permitted* to introduce evidence in the nature of expert opinion concerning his or her *mental condition without having first given notice* to the court and the prosecution of his or her intent to introduce such evidence *and without having undergone a court-ordered examination* pursuant to section 16–8–106. A defendant who places his or her mental condition at issue by giving such notice waives any claim of confidentiality or privilege as provided in section 16–8–103.6. Such notice shall be given at the time of arraignment; *except that* the court,

 for good cause shown, shall permit the defendant to inform the court and prosecution of the intent to introduce such evidence at any time prior to trial. Any period of delay caused by the examination and report provided for in section 16–8–106 shall be excluded, as provided in section 18–1–405(6)(a), C.R.S., from the time within which the defendant must be brought to trial.
 (Emphasis added).

6. Flippo acknowledges that he did not give notice of his intent to introduce expert testimony at arraignment as required by section 16–8–107(3)(b), but claimed that "for good cause shown" under section 16–8–107(3)(b), he could give notice after arraignment. Further, he claimed that he did provide sufficient notice of his proposed expert testimony through the extensive pre-trial motions and hearings heard by the court and responded to by the prosecutor. His "good cause" argument was never addressed by the trial court and was not raised by Flippo on appeal.

On appeal, Flippo challenged the exclusion of both his expert testimony and his lay opinion testimony. The court of appeals concluded that Flippo's proposed expert testimony did not fall within section 16–8–107(3)(b) because Flippo was not introducing the evidence as part of a defense. *Flippo*, 134 P.3d at 441–42. It held the trial court's exclusion of the expert evidence was error and ordered a new trial. *Id.* The court of appeals did not address whether it was error to exclude his lay opinion testimony.

We granted certiorari to consider whether the court of appeals was correct in finding that the trial court improperly excluded Flippo's expert testimony under section 16–8–107. We now reverse and remand for further consideration of Flippo's remaining issues including the exclusion of his lay opinion testimony.

## II. Analysis

 Construing the meaning and scope of the words in a statute requires that we determine and give effect to the intent of the legislature. *People v. Madden,* 111 P.3d 452, 457–58 (Colo.2005) (citations omitted). We begin our analysis with the plain and ordinary meaning of the statutory language. *Id.* Where a word is not defined statutorily, we may look to the statutory scheme for understanding. *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000). When examining the statutory scheme, it is sometimes useful to take into account the title of a statute. *Madden,* 111 P.3d at 457–58. However, when the meaning and scope of a particular statutory phrase is ambiguous, we also examine the language in its overall textual context as well as examining legislative history to determine legislative intent. *Id.*

 Flippo argues that the term "mental condition" as used contextually in section 16–8–107 is limited to evidence introduced for only two purposes: (1) in support of an insanity or impaired mental condition defense; and (2) a defense that the defendant lacked the requisite mens rea. Here, Flippo's evidence was offered to attack the weight a jury

should give to his statements. Because Flippo was not offering the evidence to directly challenge an element or to advance an affirmative defense, he argues his expert testimony falls outside of the statute. We disagree.

 Based on the language of the statute, "mental condition" includes intellectual disabilities, even though section 16–8–107(3)(b) itself provides no definition of "mental condition." The first line of subsection 107(3)(b) begins: "[r]egardless of whether a defendant enters a plea of not guilty by reason of insanity ...." These words, in this context, unambiguously state that the statute is meant to apply in those situations where insanity is *not* the reason the evidence is being introduced, such as evidence of an intellectual disability.[7] *See People v. Roadcap,* 78 P.3d 1108, 1112 (Colo.App.2003). We also find some support for this interpretation by examining the history of section 16–8–107(3).

In *People v. Requejo,* the court of appeals noted that intellectual disabilities were not included within the definition of "mental condition" as used in section 16–8–107(1). 919 P.2d 874, 877–78 (Colo.App.1996), *accord, People v. Vanrees,* 125 P.3d 403, 409 (Colo. 2005). *Requejo* was decided in 1996; three years later, the General Assembly amended section 16–8–107 and added subsection 107(3)(b) with the "regardless of whether" language. 1999 Colo. Sess. Laws 401, 403. Due to the gap in time, we cannot say that the General Assembly was directly responding to *Requejo.* However, the added language did fill a statutory gap identified by that case.

Despite this, Flippo argues that in other parts of the statute, the term "mental condition" refers exclusively to a mental impairment affecting a defendant's sanity or ability to form a culpable mental state. *Vanrees,* 125 P.3d at 409; *Requejo,* 919 P.2d at 878. Though Flippo's interpretation is correct as to those parts of the statute relating to men-

7. "Regardless of" is defined as: "in spite of; with no heed to." *American Heritage Dictionary*

1469 (4th ed.2000).

tal condition evidence as a defense,[8] subsection 107(3)(b) uses "mental condition" in a notably different manner.

The language of section 16–8–107(3)(b) evinces the General Assembly's desire to address evidence that relates to the condition of a defendant's mind beyond just issues of insanity. We agree that the term is used differently in other parts of the statute. *Compare* § 16–8–107(1)(a) (addressing a court-ordered psychiatric examination to determine a defendant's mental condition of insanity) *with* § 16–8–109 (permitting a witness *not* specially trained in psychiatry to give an opinion or conclusion concerning the mental condition of a defendant). However, since subsection 107(3)(b) applies regardless of whether a defendant enters a plea of insanity, "mental condition," as used in that subsection, unambiguously includes the introduction of expert evidence of a defendant's intellectual disability.[9] *See Requejo*, 919 P.2d at 878 (permitting admission of an expert's description of "defendant's condition of mind—that is, that he was a slow thinker."). We therefore hold that the term "mental condition," as used in section 16–8–107(3)(b), includes expert testimony regarding a defendant's intellectual disability.

In reaching the opposite conclusion, the court of appeals relied on a Wyoming decision holding that exclusion of expert testimony regarding a defendant's low I.Q., offered to challenge the circumstances of his confession, was reversible error. *See Hannon v. State*, 2004 WY 8, 84 P.3d 320 (2004). In *Hannon*, the offered expert testimony pertained specifically to the defendant's individual psychological and cognitive conditions relevant to the jury's determination of whether his confession was voluntary. *Id.* at 351. The defendant was effectively prevented from explaining his confession when he was stripped of the opportunity to describe the conditions that caused him to confess. *Id.*

■ We agree with the Wyoming court's assessment that, unless the expert opinion evidence is flatly unreliable, its exclusion risks deprivation of a defendant's right to present a defense. However, including intellectual disabilities within the requirements of the statute is not to say that such expert testimony is inadmissible. To the contrary, our case law has made clear that evidence of a defendant's intellectual disability is admissible when relevant. *Vanrees*, 125 P.3d at 409. In *Vanrees*, we held that evidence of "mental slowness" is admissible on the issue of whether the defendant was able to form the required mens rea for the offense. *Id.* In *People v. Lopez*, we held that a defendant has the right to present expert psychological evidence to show the jury his confession was unworthy of belief. 946 P.2d 478, 482 (Colo.App.1997) (relying on *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)). Even lay opinion testimony about a defendant's mental condition may be used to attack or rehabilitate the credibility of out-of-court statements presented at trial.[10] *People v. Gallegos*, 644 P.2d 920, 928 (Colo.1982); *accord, Farley v. People*, 746 P.2d 956, 958 (Colo.1987).

■ Therefore, generally speaking, defendants may attack the credibility or reliability of a confession and allow the jury to deter-

---

**8.** Section 16–8–107(1)(a), C.R.S. (2006) reads:

Except as provided in this subsection (1), no evidence acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of a court-ordered examination under [the statutes dealing with insanity evidence] is admissible against the defendant on the issues raised by a plea of not guilty, if the defendant is put to trial on those issues, except to rebut evidence of his or her *mental condition introduced by the defendant to show incapacity to form a culpable mental state;* and, in such case, that evidence may be considered by the trier of fact only as bearing upon the question of *capacity to form a culpable mental state,* and

the jury, at the request of either party, shall be so instructed.

(Emphasis added); *see also* § 16–8–107(1.5), C.R.S. (2006). The statutes also refer to "mental processes," however the meaning of this term, in relation to "mental condition," is ambiguous.

**9.** "Condition" is variously defined as: "mode or state of being; state of health; a disease or physical ailment." *American Heritage Dictionary* 1469.

**10.** Lay opinion testimony concerning a defendant's mental condition may be generally admissible. § 16–8–109; *see Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1253 (Colo.1994); *see also* CRE 701 (admission of lay opinion testimony).

mine any weight that should be given to such statements. *Deeds v. People*, 747 P.2d 1266, 1272 (Colo.1987); *see Crane*, 476 U.S. at 690, 106 S.Ct. 2142 (noting that: "an essential component of procedural fairness is an opportunity to be heard.... That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence."); *Lopez*, 946 P.2d at 482; *see also* ABA Criminal Justice Mental Health Standard 7–5.8 (stating that where a statement has been admitted into evidence, the court should permit evidence to be presented to the trier of fact regarding the effect of the defendant's mental retardation on the reliability of the statement).

Although a defendant is entitled to present evidence in his or her defense, the manner in which the evidence is presented may be controlled by statute. *Taylor v. Illinois*, 484 U.S. 400, 411, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). In Colorado, when a defendant wishes to introduce expert testimony about his mental condition, he must comply with section 16–8–107. According to the requirements of the statute, a defendant must provide notice and permit a court-ordered examination before offering expert testimony regarding the effect of his mental condition on a relevant issue at trial. § 16–8–107(3)(b). If a defendant does not provide notice at arraignment, the trial court must allow the defendant to argue good cause has been shown as to why the defendant should be allowed to give notice at a later date. *Id.* Once notice has been given, the court may order an evaluation. *Id.* After these procedural requirements have been met, the only remaining issue is admissibility. Admissibility of this expert testimony must be deter-mined under the Colorado Rules of Evidence and in light of the constitutional considerations we have identified here. *People v. Ramirez*, 155 P.3d 371, 379 (Colo.2007). However, failure to comply with the procedural prerequisites of the statute may prevent such evidence from being admitted.[11]

Under the facts of this case, the trial court properly determined that Flippo's proposed expert testimony was subject to the requirements of the statute. Flippo did not provide timely notice and therefore the trial court did not order an examination. Flippo therefore failed to comply with the procedural requirements of the statute and the trial court was correct in excluding Flippo's expert testimony. However, our opinion here does not reach any conclusions about the admissibility of Flippo's proposed lay opinion testimony or whether its exclusion was error by the trial court.

The court of appeals' conclusion, that exclusion of Flippo's expert testimony at trial was error, is therefore reversed. On remand, the court of appeals should address Flippo's remaining issues including whether Flippo's lay opinion testimony was wrongfully excluded and, if so, whether such exclusion was error.

### III. Conclusion

The judgment of the court of appeals is reversed. We remand to the court of appeals to resolve Flippo's remaining appellate issues.

---

11. Flippo argues for the first time that applying the statute to his proposed evidence would allow the state to unconstitutionally prohibit evidence under rules that serve no legitimate purpose or are disproportionate to the ends they are asserted to promote. Although Flippo did challenge the constitutionality of the statute, he did not do so on these grounds. Generally, we do not address new constitutional concerns at this point in the litigation. *See Manka v. Martin*, 200 Colo. 260, 264, 614 P.2d 875, 877 (1980) (new constitutional questions raised for the first time in an appellate brief will not successfully raise the is-sue for review). Thus we decline to consider whether the statute, as we construed it, is constitutional. Moreover, because we have determined that the statute is unambiguous, it expresses the clear intent of the General Assembly and is not susceptible to alternative constructions. Therefore, we do not employ the doctrine of constitutional avoidance to address his concerns. *See People v. Darlington*, 105 P.3d 230, 234 (Colo. 2005); *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 494, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001).