2012 CO 21

**In re the PEOPLE of the State of Colorado, Plaintiff**

v.

**Tyler R. WILBURN, Defendant.**

**No. 11SA331.**

Supreme Court of Colorado, En Banc.

March 26, 2012.

The Life & Liberty Law Office, Sarah Schielke, Fort Collins, Colorado, Attorney for Defendant.

Mark Hurlbert, District Attorney, Fifth Judicial District, Michael W.V. Angel, Deputy District Attorney, Georgetown, Colorado, Attorneys for Plaintiff.

Justice HOBBS delivered the opinion of the court.

¶ 1 We accepted jurisdiction over this original proceeding to construe sections 16–8–107(3)(b) and 16–8–106(1), C.R.S. (2011), addressing the commitment of a defendant for a court-ordered mental examination. The prosecution charged defendant Tyler Wilburn with violating section 18–8–212, C.R.S. (2011), a class six felony, for failing to appear in court on May 16, 2011 regarding several charges related to a traffic stop. Wilburn raises a mistake of fact defense cognizable under section 18–1–504(1)(a), C.R.S. (2011). He seeks to defend himself against the "knowingly" element of the bail bond violation charge [1] on the basis that he wrote down his appearance date as May 19 rather than May 16 due to a learning disorder.

¶ 2 Wilburn notified the prosecution and the court that he intended to call a defense expert to testify to his learning disorder, which the expert diagnosed as a "Disorder of Written Expression." Throughout a number of hearings, the prosecution maintained that Wilburn could not pursue such a defense unless he pleads not guilty by reason of insanity and, if he does, the trial court must commit him to a state mental facility for a psychiatric examination for a period of time that could last up to forty-five days. Wilburn agreed to submit to a court-ordered examination, and sought to have it scheduled with the Colorado Mental Health Institute at Pueblo on a one-day out-patient basis so he would not lose his job. The trial court verified with this facility that it could schedule such a one-day examination, but the prosecution continued to contend that Wilburn must plead insanity and undergo a mandatory multi-day commitment. The trial court agreed with the prosecution's view of the applicable statutes. We disagree and make our rule to show cause absolute.

¶ 3 We reverse the trial court's determination that Wilburn's proposed use of expert testimony concerning his learning disorder requires him to plead not guilty by reason of insanity and submit to a forty-five day confinement at a state mental health facility. Expert testimony of a mental condition, introduced pursuant to section 16–8–107(3)(b), does not necessarily require entry of an insanity plea. Assuming that Wilburn complies with section 16–8–107(3)(b) and undergoes a court-ordered examination pursuant to section 16–8–106, Wilburn's mistake of fact defense under section 18–1–504(1)(a) may include expert testimony of his learning disability. The trial court has discretion under section 16–8–106(1) to specify the place where the examination is to be conducted and the period of time allocated for it, based on the nature of Wilburn's defense.

## I.

¶ 4 On March 22, 2011, a Colorado Division of Wildlife officer pulled Wilburn over on Interstate 70 for allegedly violating the speed limit. According to Wilburn, a significant amount of time passed without any contact from the officer and he drove away because he did not recognize the vehicle as law enforcement. The Division of Wildlife officer immediately pursued and called the police for help, believing Wilburn was fleeing the scene. The police responded, pulled Wilburn over, arrested him, and took him to jail.

¶ 5 On March 23, 2011, the prosecution charged Wilburn with various offenses related to the incident, including vehicular elud-

---

1. Section 18–8–212(1) provides,

   A person who is released on bail bond of whatever kind, and either before, during, or after release is accused by complaint, information, indictment, or the filing of a delinquency petition of any felony arising from the conduct for which he was arrested, commits a class 6 felony if he *knowingly* fails to appear for trial or other proceedings in the case in which the bail bond was filed or if he knowingly violates the conditions of the bail bond.

   (Emphasis added).

ing, a class five felony.[2] The trial court set Wilburn's bond and ordered him to appear in court at 9:00 a.m. on May 16, 2011. As a condition of Wilburn's bond, he was required to appear at all scheduled court dates.

¶ 6 Wilburn did not appear in court on the morning of May 16. His attorney appeared but was unable to contact him by phone until late in the morning. Wilburn informed his attorney that he had thought the court date was May 19, not May 16. He rushed to the district courthouse and arrived around 1:30 p.m. He was then arrested for violating his bond condition. The next morning, the prosecution amended the complaint to add a charge of violation of bail bond conditions, a class six felony under section 18–8–212.

¶ 7 According to Wilburn, he thought the court date was scheduled for May 19, and had written down that date instead of May 16. His attorney inquired as to any learning disabilities that might have contributed to his mistake. Wilburn reported having been diagnosed with dyslexia at a young age. His attorney confirmed the history of his learning disability by speaking with family members. Because of Wilburn's frequent relocations as a child, his family had lost the medical records of his diagnosis and treatment.

¶ 8 On August 15, 2011, Wilburn's attorney mailed notice to the prosecution that Wilburn intended to introduce expert testimony of Dr. Kevin Everhart at Wilburn's trial in order to challenge the allegation that Wilburn "knowingly" violated his bail bond condition. The letter stated that

> Dr. Everhart will share his specialized knowledge to assist the trier of fact to understand the culpable mental state requirement of "knowingly" as applied to Mr. Wilburn, and in light of Mr. Wilburn's

learning disabilities and speech pathology. Dr. Everhart will discuss the likely impact of these disorders/disabilities on Mr. Wilburn's ability to satisfy the "knowingly" requirement in ... the violation of bail bond conditions charge....

¶ 9 The prosecution filed a brief in support of an insanity advisement of Wilburn, arguing that Wilburn's letter indicated that Wilburn intended to introduce evidence concerning a mental condition, which required a "commitment" to the Colorado Mental Health Institute in Pueblo for a state-conducted mental examination.

¶ 10 The trial court set an emergency hearing for advisement on August 25, 2011, to determine whether Wilburn had good cause to assert the defense of impaired mental condition so near to trial and to advise Wilburn concerning the requirement of a court-ordered mental examination pursuant to section 16–8–106.[3]

¶ 11 In response, Wilburn argued that his proposed expert testimony did not qualify as evidence of a "severely abnormal mental condition" requiring a special plea. Wilburn's attorney noted that the proposed expert testimony does not relate to Wilburn's capacity to form the mens rea of "knowingly" but tended to show factually that Wilburn did not "knowingly" miss his court date because he suffered from a serious learning disability that may have caused him to mix up the "6" and the "9" when he wrote down the date.

¶ 12 At the hearing on August 25, the prosecution steadfastly maintained that Wilburn's proposed defense required a plea of not guilty by reason of insanity. The prosecution argued that section 16–8–105.5, C.R.S. (2011) thus applies,[4] and Wilburn would need to be committed to a state mental health

---

2. § 18–9–116.5, C.R.S. (2011).

3. Throughout the proceedings below, the prosecution, defense counsel, and the trial court referred to section 16–8–103.5, C.R.S. (2011), which defines the affirmative defense of "impaired mental condition" as it existed before 1996. In 1995, the General Assembly codified a new definition of "insanity" and amended and reorganized the sections applicable to insanity pleas and mental condition defenses. *See* ch. 26,

secs. 1–15, 1995 Colo. Sess. Laws 71, 71–79; *People v. Laeke*, 2012 CO 13, ¶ 8, 271 P.3d 1111. Section 16–8–103.5 was repealed in that reorganization and "appl[ies] only to offenses committed before July 1, 1995." § 16–8–103.5(8).

4. Section 16–8–105.5 states that "[w]hen a plea of not guilty by reason of insanity is accepted, the court shall forthwith commit the defendant for a sanity examination, specifying the place and period of commitment."

facility for a period of time to complete a mental examination.

¶ 13 Wilburn's attorney argued that Wilburn's learning disability is not included within the statutory definition of insanity but is admissible under section 16–8–107 as evidence of a "mental condition." She argued that the testimony related to a factual matter of whether, on May 16, Wilburn "knowingly" violated his bail bond conditions. Wilburn agreed to submit to a state-ordered mental examination and urged the trial court to exercise discretion under section 16–8–106 to set a one-day examination so he would not lose his job.

¶ 14 The trial court determined that the proposed expert testimony required a plea of not guilty by reason of insanity, reasoning that the testimony was intended to "negate the mens rea" for the offense. The court advised Wilburn of the consequences of an insanity plea and gave notice that he must submit to a lengthy court-ordered mental health examination. The court continued the case for later in the year to allow time for the examination and bifurcated the proceedings into a two-day trial on the charges relating to the traffic stop, and a one-day trial on the charge of violating bail bond conditions. The court set future hearings on the expert testimony issue in order to give Wilburn time to consider his plea.

¶ 15 At these hearings, the trial court maintained that the proposed expert testimony required a plea of not guilty by reason of insanity. The parties argued over the time, length, and location of a mental health examination pursuant to statute. The prosecution argued that section 16–8–105.5 applied to the case, which requires the court "to forthwith commit" Wilburn to a state mental health facility to conduct the mental health examination.

¶ 16 The trial court telephoned the state mental health facility at Pueblo during the hearing. An employee there informed the court that, under these circumstances, the facility could do a one-day out-patient examination, which Wilburn agreed to. However, the prosecution continued to contend that the statute contained no room for judicial discretion, and the trial court had to "commit" Wilburn to the state facility for a period of time. The trial court then ordered Wilburn committed to the state mental health facility in Pueblo for forty-five days to conduct a court-ordered mental examination.

¶ 17 We now make our rule to show cause absolute, determining that the trial court's construction of the applicable statutes is erroneous.

## II.

¶ 18 We reverse the trial court's determination that Wilburn's proposed use of expert testimony concerning his learning disorder requires him to plead not guilty by reason of insanity and submit to a forty-five day confinement at a state mental health facility. Expert testimony of a mental condition, introduced pursuant to section 16–8–107(3)(b), does not necessarily require entry of an insanity plea. Assuming that Wilburn complies with section 16–8–107(3)(b) and undergoes a court-ordered examination pursuant to section 16–8–106, Wilburn's mistake of fact defense under section 18–1–504(1)(a) may include expert testimony of his learning disability. The trial court has discretion under section 16–8–106(1) to specify the place where the examination is to be conducted and the period of time allocated for it, based on the nature of Wilburn's defense.

### A.

#### Standard of Review

¶ 19 We review the construction of statutory provisions de novo as a matter of law. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000). Our primary goal in construing legislation is to give effect to the intent of the legislature. *Laeke*, 2012 CO 13, ¶ 11, 271 P.3d 1111. To determine legislative intent, we look first to the statutory language. *Id.*

### B.

#### Expert Testimony and the Mental Examination Requirement

¶ 20 Section 18–1–504(1)(a) provides that a person may be relieved of criminal liability for conduct he engaged in under a mistaken

belief of fact if the mistake "negatives the existence of a particular mental state essential to the commission of the offense."[5] § 18–1–504(1)(a). Section 16–8–107(3)(b) provides procedures for admission of expert testimony concerning defendant's mental condition "[r]egardless of whether a defendant enters a plea of not guilty by reason of insanity." Accordingly, when a defendant's mental condition is not so severe as to be included in the statutory definition of "insanity,"[6] but instead is offered to show that the defendant had a mistaken belief of fact that negates the existence of a culpable mental state, expert testimony concerning the mental condition can be admissible. *See* § 16–8–107(3)(b); § 18–1–504(1)(a). In those cases, the defendant must nevertheless provide adequate notice to the court and submit to a court-ordered mental examination. § 16–8–103.7(3)(a), C.R.S. (2011); § 16–8–107(3)(b).

¶ 21 In *People v. Flippo*, 159 P.3d 100, 104–05 (Colo.2007), we ruled that the legislature, in section 16–8–107, had distinguished between expert testimony offered to support a plea of not guilty by reason of insanity and expert testimony of a mental condition in support of a defendant's theory that, on the occasion in question, he did not form the mens rea required for conviction. The plain language of section 16–8–107(3) demonstrates legislative intent to distinguish between these two uses of expert testimony concerning a defendant's mental condition.[7] § 16–8–107(3); *Flippo*, 159 P.3d at 104.

¶ 22 We concluded in *Flippo* that the term "mental condition" in section 16–8–107(3)(b) includes a defendant's intellectual disability that is not "severely abnormal" such that it is included in the statutory definition of "insanity." 159 P.3d at 105. Defendant in that case sought to admit expert testimony of an intellectual disability suggesting his confession was involuntary. *Id.* at 103. Interpreting the language of section 16–8–107(3)(b), we determined the legislature intended to allow a defendant to introduce expert testimony of a mental condition that is not "severely abnormal"—such as an intellectual disability— without pleading insanity. *Id.* at 104–06 (reasoning that the broad language of section 16–8–107(3)(b) "evinces the General Assembly's desire to address evidence that relates to the condition of a defendant's mind beyond just issues of insanity"); *see also People v. Vanrees*, 125 P.3d 403, 408–09 (Colo.2005) (observing that the legislature did not intend to create an " 'all or nothing' insanity defense that applies in all cases where the defendant

---

**5.** The full language of section 18–1–504(1)(a) states:

(1) A person is not relieved of criminal liability for conduct because he engaged in that conduct under a mistaken belief of fact, unless: (a) It negatives the existence of a particular mental state essential to commission of the offense.

**6.** One of Colorado's two tests for "insanity" is "[a] person who suffered from a condition of mind caused by mental disease or defect that prevented the person from forming a culpable mental state that is an essential element of a crime charged." § 16–8–101.5(1)(b), C.R.S. (2011). As used there, " '[m]ental disease or defect' includes only those *severely abnormal mental conditions* that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable to the voluntary ingestion of alcohol or any other psychoactive substance." § 16–8–101.5(2)(b) (emphasis added).

**7.** The distinction is found in subsections (a) and (b) of section 16–8–107(3):

(a) In no event shall a court permit a defendant to introduce evidence relevant to the issue of insanity . . . unless the defendant enters a plea of not guilty by reason of insanity. . . . (b) *Regardless of whether a defendant enters a plea of not guilty by reason of insanity pursuant to section 16–8–103*, the defendant shall not be permitted to introduce *evidence in the nature of expert opinion concerning his or her mental condition* without having first given notice to the court and the prosecution of his or her intent to introduce such evidence and without having undergone a court-ordered examination pursuant to section 16–8–106. . . . Such notice shall be given at the time of arraignment; except that the court, for good cause shown, shall permit the defendant to inform the court and prosecution of the intent to introduce such evidence at any time prior to trial. . . . (Emphasis added).

This distinction is also evident in section 16–8–103.6(2)(a), C.R.S. (2011), a section titled "Waiver of Privilege." There, the legislature noted the two situations in which a defendant waives confidentiality or privilege to communications between the defendant and his psychologist: (1) where a defendant pleads not guilty by reason of insanity, or (2) where a defendant seeks "to introduce evidence concerning his or her mental condition pursuant to section 16–8–107(3)."

presents evidence challenging the culpable mental state element of the crime charged" and holding that defendant may introduce non-expert testimony of "mental slowness" to challenge mens rea without insanity plea).

¶ 23 Nevertheless, when a defendant seeks to admit expert testimony related to a mental condition, section 16–8–107(3)(b) requires the defendant to "undergo[ ] a court-ordered examination pursuant to section 16–8–106." The plain language of section 16–8–106(1)[8] accords a court discretion to specify "the place where such examination is to be conducted and the period of time allocated for such examination."

### C.

### Application to this Case

■ ¶ 24 Here, Wilburn gave notice that he intended to introduce expert testimony concerning evidence of a learning disability. According to the expert's written report, Wilburn qualifies for a DSM–IV diagnosis[9] of "Disorder of Written Expression" that affects his ability to accurately record and organize basic information.[10] Wilburn asserts that this testimony would assist the jury in understanding his defense that he mistakenly wrote down the wrong court date and thus did not "knowingly" violate his bail bond condition.

¶ 25 Wilburn does not argue that his learning disability inhibits his ability to form the mens rea "knowingly." Instead he pleads a mistake of fact—that he wrote down the wrong court date—and his proposed expert testimony demonstrates that his mistake may have been due to a learning disability. The testimony is relevant to whether his mistake negates the "knowingly" element of his section 18–8–212 charge. Such a defense is allowed under section 18–1–504(1)(a).

¶ 26 Admissibility of expert testimony concerning a defendant's mental condition is governed by section 16–8–107, which distinguishes between evidence relevant to the issue of insanity, § 16–8–107(3)(a), and all other evidence concerning a defendant's "mental condition," § 16–8–107(3)(b).

¶ 27 Similar to the defendants in *Flippo* and *Vanrees*, Wilburn does not claim his learning disability rises to the statutory level of a "mental disease or defect" that requires an insanity plea. *See Flippo*, 159 P.3d at 103–04; *Vanrees*, 125 P.3d at 409. We agree that a learning disability such as a Disorder of Written Expression is outside of the statutory definition of "insanity," and determine that Wilburn's proposed expert testimony of a learning disability is not evidence of a "severely abnormal mental condition[ ] that grossly and demonstrably impair[s]" his "perception or understanding of reality." § 16–8–101.5(2)(b). Thus, section 16–8–107(3)(a) does not apply.

¶ 28 While a learning disorder is not a mental illness, it is a mental disorder classified in the DSM–IV. Under psychiatric standards, whether a learning disorder constitutes a "mental condition" may be debatable. *See DSM–IV, supra* n. 9, at xxx–xxxi

---

8. Section 16–8–106(1) states

> All examinations ordered by the court in criminal cases shall be accomplished by the entry of an order of the court specifying the place where such examination is to be conducted and the period of time allocated for such examination. The defendant may be committed for such examination to the Colorado psychiatric hospital in Denver, the Colorado mental health institute at Pueblo, the place where he or she is in custody, or such other public institution designated by the court. In determining the place where such examination is to be conducted, the court shall give priority to the place where the defendant is in custody, unless the nature and circumstances of the examination require designation of a different facility. The defendant shall be observed and examined by one or more psychiatrists during

> such period as the court directs. For good cause shown, upon motion of the prosecution or defendant, or upon the court's own motion, the court may order such further or other examination, including services of psychologists, as is advisable under the circumstances....

9. "DSM–IV" refers to American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. text revision 2000).

10. The written report of Wilburn's expert states that Wilburn's "functional impairment is focused in the area of written output," and his ability to organize thoughts to produce accurate text is "significantly limited." The expert concludes that Wilburn's mistake in missing his court date is consistent with his learning disability.

(noting that although the DSM–IV provides a classification of mental disorders, no definition adequately specifies precise boundaries for the concept of "mental disorder"). However, as discussed above, we have held that subsection 16–8–107(3)(b) is a broad provision. *See Flippo*, 159 P.3d at 104. Given the broad nature of this provision, we conclude that when a defendant's expert intends to testify that a defendant possesses a learning disorder, the requirements of section 16–8–107(3)(b) are triggered.

¶ 29 Thus, section 16–8–107(3)(b) governs the admissibility of expert testimony concerning Wilburn's learning disability. Like the evidence of the defendant's intellectual disability and low IQ that we approved as admissible in *Flippo*, Wilburn's evidence concerning his learning disability is admissible without an insanity plea as long as he "provide[s] notice and permit[s] a court-ordered examination." *Flippo*, 159 P.3d at 106; *see* § 16–8–107(3)(b).

¶ 30 Assuming that he complies with section 16–8–107(3)(b), Wilburn's defense may include expert testimony of a learning disability. Section 16–8–107(3)(b) specifically refers back to section 16–8–106. In turn, section 16–8–106 plainly anticipates trial court discretion to specify, by order, "the place where such examination is to be conducted and the period of time allocated for such examination." § 16–8–106(1). The trial court should exercise its discretion considering the nature of Wilburn's defense and the kind of mental examination required to allow the prosecution to fairly rebut his defense. Under section 16–8–106(1), the trial court has discretion to consider and to order a suitable out-patient examination.

### III.

¶ 31 Accordingly, we make our rule absolute and return this case to the trial court for further proceedings consistent with this opinion.