Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2020 CO 22**

**No. 19SA242, *In Re People v. Rosas*—Insanity—Not Guilty by Reason of Insanity Plea—Evidence Regarding a Defendant's Capacity to Form the Requisite Culpable Mental State—Expert Mental Condition Evidence.**

The supreme court concludes that evidence that a mental disease or defect prevented a defendant from forming the culpable mental state required by a charged offense is evidence relevant to the issue of insanity. Further, the supreme court concludes that a defendant—even one charged with specific intent crimes—cannot introduce evidence relevant to the issue of insanity without first entering a plea of not guilty by reason of insanity. Because the district court allowed the defendant to introduce evidence relevant to the issue of insanity without requiring him to enter a plea of not guilty by reason of insanity, the supreme court makes the rule to show cause absolute.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

**2020 CO 22**

---

**Supreme Court Case No. 19SA242**
*Original Proceeding Pursuant to C.A.R. 21*
Arapahoe County District Court Case No. 18CR72
Honorable Andrew C. Baum, Judge

---

**In Re**

**Plaintiff:**

The People of the State of Colorado,

v.

**Defendant:**

Paul Damon Rosas.

---

**Rule Made Absolute**
*en banc*
March 16, 2020

---

**Attorneys for Plaintiff:**
George H. Brauchler, District Attorney, Eighteenth Judicial District
Susan J. Trout, Senior Deputy District Attorney
*Centennial, Colorado*

**Attorneys for Defendant:**
The Law Firm of Michael D. Miller, LLC
Michael D. Miller
*Lakewood, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1    Must a defendant charged with specific intent crimes plead not guilty by reason of insanity ("NGRI") in order to introduce evidence that, as a result of a mental disease or defect, he was incapable of forming the requisite culpable mental state on the dates of the offenses charged?  The district court said "no."  The People then filed a petition pursuant to C.A.R. 21, and we issued a rule to show cause.  Because the correct answer to the question is "yes," we make the rule absolute.  Evidence that a mental disease or defect prevented a defendant from forming the culpable mental state required by an offense charged is evidence relevant to the issue of insanity.  And a defendant—even one charged with specific intent crimes—cannot introduce evidence relevant to the issue of insanity without first pleading NGRI.

**I**

¶2    Based on an incident that occurred between January 3 and 4 of 2018, the People charged Paul Damon Rosas with two counts of second degree assault on a peace officer (class 4 felonies), two counts of attempted second degree assault on a peace officer (class 5 felonies), and one count of obstructing a peace officer (a class 2 misdemeanor).  Rosas filed a notice of the affirmative defense of "impaired mental condition" pursuant to section 16-8-103.5, C.R.S. (2019), asserting that at the time of the offenses he was suffering from a mental disease or defect that made him incapable of forming the requisite culpable mental state.  But this affirmative

2

defense no longer exists; in fact, it hasn't existed for a quarter of a century. *See* § 16-8-103.5(8) ("This section shall apply only to offenses committed before July 1, 1995."). Effective July 1, 1995, our General Assembly "modified the test for insanity to fold in the former affirmative defense for 'impaired mental condition.'" *Renfandt v. N.Y. Life Ins. Co.*, 2018 CO 49, ¶ 48, 419 P.3d 576, 585. Thus, what used to be the defense of "impaired mental condition" is now subsumed within the defense of insanity.

¶3    Insanity is defined through the following two-part test:

> (a) A person who is so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act is not accountable; except that care should be taken not to confuse such mental disease or defect with moral obliquity, mental depravity, or passion growing out of anger, revenge, hatred, or other motives and kindred evil conditions, for, when the act is induced by any of these causes, the person is accountable to the law; or

> (b) A person who suffered from a condition of mind caused by mental disease or defect that prevented the person from forming a culpable mental state that is an essential element of a crime charged, but care should be taken not to confuse such mental disease or defect with moral obliquity, mental depravity, or passion growing out of anger, revenge, hatred, or other motives and kindred evil conditions because, when the act is induced by any of these causes, the person is accountable to the law.

§ 16-8-101.5(1), C.R.S. (2019).[1]  With respect to crimes committed before July 1, 1995, as to which insanity and impaired mental condition are separate defenses, paragraph (a) above defines "insanity" and paragraph (b) above defines "impaired mental condition," though the two defenses do not reside within the same statute.  *See* § 16-8-101(1), (3), C.R.S. (2019); § 16-8-102(2.7), C.R.S. (2019).

¶4     The People objected to Rosas's notice of the defense of impaired mental condition, but only on the ground that it was untimely.  After a hearing, the district court overruled the People's objection and "allow[ed] [Rosas] to enter an affirmative defense of impaired mental condition."   It then ordered an examination "for impaired mental condition."[2]

---

[1] Neither "[d]iseased or defective in mind" nor "[m]ental disease or defect," as those terms are used in section 16-8-101.5(1), includes an abnormality that is "manifested only by repeated criminal or otherwise antisocial conduct." § 16-8-101.5(2).    Further, "[m]ental disease or defect," as referenced in section 16-8-101.5(1), "includes only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable to the voluntary ingestion of alcohol or any other psychoactive substance."  § 16-8-101.5(2)(b).

[2] In fairness to the district court, it acknowledged that impaired mental condition is now part of insanity.  But it continued to refer to the outdated defense and it ultimately ordered an "examination for impaired mental condition."

¶5 Then, rather than order an examination of Rosas at the Colorado Mental Health Institute at Pueblo ("CMHIP") or at another eligible public facility *selected by the court*, *see* § 16-8-106(1)(a), C.R.S. (2019), the court incorrectly ordered an examination by a psychiatrist, psychologist, or other expert *of Rosas's choosing*.[3] The court appears to have relied on section 16-8-108(1)(a), C.R.S. (2019), but that provision simply permits a defendant to request a *second* court-ordered examination—one that may be performed "by a psychiatrist, psychologist, or other expert of his own choice."[4] § 16-8-108(1)(a); *see also* § 16-8-106(1)(a) (requiring, in the first instance, a court-ordered examination at a "public institution designated by the court").

¶6 Rosas retained Dr. Patricia Westmoreland to complete the court-ordered examination. In her report, Dr. Westmoreland diagnosed Rosas as suffering from

---

[3] Section 16-8-106(1)(a) addresses court-ordered mental examinations; it lists the following as the locations where defendants may be committed for such examinations: "the Colorado psychiatric hospital in Denver, [CMHIP], the place where he or she is in custody, or such other public institution designated by the court." § 16-8-106(1)(a); *see also* § 16-8-105.5(1), C.R.S. (2019) (noting that "the court shall forthwith commit the defendant for a sanity examination, specifying the place and period of commitment").

[4] Of course, a defendant may obtain his own private examination at any time without making a request under section 16-8-108(1)(a) for a court-ordered examination.

5

multiple conditions on the dates of the offenses: bipolar I disorder, current episode manic, with psychotic feature; alcohol use disorder; cannabis use disorder; and a concussion. She concluded that Rosas's actions were the result of "delusions" caused by "his acutely manic state, which rendered him so acutely mentally ill that he required not only restraints and high doses of major tranquilizers in the immediate period, but [also] acute psychiatric hospitalization with a need for medication adjustment several weeks later" before he could finally be psychiatrically stabilized. Defense counsel subsequently informed the court that Dr. Westmoreland intends to opine at trial that, as a result of a severe mental disease or defect, Rosas was not capable of forming the culpable mental state required by all four of the felony charges—i.e., the culpable mental state of intentionally.[5]

¶7 The People moved for a second examination, this one by CMHIP, and the court held a hearing on their motion. At the hearing, the court sought confirmation from Rosas that he had not pled NGRI, "which would include impaired mental condition," and had instead simply given notice of his intent to introduce expert evidence of his mental condition pursuant to section 16-8-107(3)(b), C.R.S. (2019).

---

[5] Dr. Westmoreland concedes that Rosas was capable of forming the culpable mental state of knowingly required by the misdemeanor obstruction charge.

6

Rosas confirmed that the court's recollection was accurate. However, the record reflects that Rosas had clearly indicated that he plans to introduce evidence related to insanity (evidence of impaired mental condition), not expert mental condition evidence pursuant to section 16-8-107(3)(b). The court apparently misremembered what had transpired in earlier proceedings, including that it had ordered an impaired mental condition examination, not an examination pursuant to section 16-8-107(3)(b).

¶8 Under section 16-8-107(3)(b), a defendant may introduce expert evidence of his "mental condition" when his "mental condition is not so severe" as to fall within "the statutory definition of 'insanity'" and such evidence is offered "to show that [he] had a mistaken belief of fact that negates the existence of a culpable mental state."[6] *People v. Wilburn*, 2012 CO 21, ¶ 20, 272 P.3d 1078, 1082 (quoting § 16-8-107(3)(b)). Section 16-8-107(3) reflects that our legislature has

---

[6] The term "mental condition," as used in section 16-8-107(3)(b), is not defined; however, we have interpreted it to include a defendant's intellectual disability that is not so severely abnormal as to come within the statutory definition of insanity. *People v. Flippo*, 159 P.3d 100, 104 (Colo. 2007); *see also People v. Wilburn*, 2012 CO 21, ¶ 25, 272 P.3d 1078, 1083 (explaining that the defendant did not claim that his mental condition, a learning disability, rose to the statutory level of a mental disease or defect that would require an NGRI plea).

"distinguished between expert testimony offered to support a plea of [NGRI] and expert testimony of a mental condition in support of a defendant's theory that, on the occasion in question, he did not form the mens rea required for conviction." *Id.* at ¶ 21, 272 P.3d at 1082; *see also* § 16-8-103.6(2)(a), C.R.S. (2019) (distinguishing, for purposes of waiver of confidentiality or privilege, between pleading NGRI and seeking to introduce expert evidence of mental condition under section 16-8-107(3)(b)).

¶9     Whereas a defendant who raises the defense of insanity must plead NGRI, *see* § 16-8-103(1.5)(a), C.R.S. (2019), a defendant who wishes to introduce expert evidence of mental condition pursuant to section 16-8-107(3)(b) need only provide timely notice of his intent to present such evidence.  However, like a defendant who asserts the insanity defense, a defendant relying on section 16-8-107(3)(b) must submit to a court-ordered examination pursuant to section 16-8-106.

¶10    The court granted the People's motion for a second examination.  But, in accordance with its erroneous belief that Rosas was proceeding pursuant to section 16-8-107(3)(b), it ordered CMHIP to conduct an examination related to his "mental condition," not his sanity.  In so doing, the court seemed to assume that evidence that on the dates of the offenses Rosas suffered from a mental disease or defect that deprived him of "the *capacity* to form the culpable mental state" of

8

intentionally is evidence governed by section 16-8-107(3)(b), not evidence relevant to the issue of insanity. (Emphasis added.)

¶11 Dr. Brittany Remmert performed CMHIP's mental condition examination of Rosas. After diagnosing him as suffering from, among other things, bipolar disorder with psychotic features, she concluded that he experienced symptoms of this serious mood disorder prior to and after the charged assaults. She added that at the time of the offenses Rosas exhibited "a severely abnormal mental condition that grossly and demonstrably impaired [his] understanding or perception of reality." In other words, Dr. Remmert opined that Rosas suffered from a mental disease or defect that affected his mental condition on the dates of the offenses. *See* § 16-8-101.5(2)(b) (defining "[m]ental disease or defect" as including "only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality").

¶12 In a follow-up telephone interview with the People, Dr. Remmert informed them that she had not formulated or rendered an opinion as to whether Rosas was capable of forming the culpable mental state of intentionally at the time of the offenses. According to Dr. Remmert, she could not offer such an opinion because she had not been asked to conduct a sanity examination and had not conducted such an examination; instead, pursuant to the court's order, she had performed a mental condition examination consistent with section 16-8-107(3)(b).

9

¶13    Dr. Remmert's position placed the People in a predicament. At the hearing on their motion for a second examination, Rosas had informed the court that Dr. Westmoreland would opine at trial that Rosas lacked the capacity to form the culpable mental state of intentionally at the time of the offenses. And Dr. Remmert had just informed the People that she could not attempt to rebut that evidence because the court had ordered her to complete a mental condition examination under section 16-8-107(3)(b), not a sanity examination.

¶14    The People thus moved to strike any expert evidence of mental disease or defect or, alternatively, to compel both an NGRI plea and an order for a sanity examination. They argued that the evidence Rosas seeks to introduce at trial is relevant to the issue of insanity because he claims that, as a result of a mental disease or defect, he was rendered incapable of forming the required culpable mental state of intentionally on the dates of the offenses. Therefore, asserted the People, Rosas should be ordered to enter an NGRI plea or be precluded from offering the challenged evidence.

¶15    Rosas objected, insisting that he is not attempting to introduce evidence relevant to the issue of insanity. He further urged the court to find that, regardless, Colorado law allows a defendant charged with specific intent crimes to "introduce [expert] evidence of his mental condition as it bears upon his ability to form the culpable mental state without pleading [NGRI]."

10

¶16 Siding with Rosas, the court denied both the request to exclude the proposed evidence and the alternative request to compel an NGRI plea and a sanity examination. It ruled that Rosas is not required to plead NGRI to introduce the evidence in question because he is charged with specific intent crimes. At the People's request, however, the court ordered a supplemental examination by Dr. Remmert to allow her to opine whether Rosas had the capacity to form the culpable mental state of intentionally at the time of the offenses. The court made clear, though, that it was not ordering a sanity examination—apparently because it continued to believe that evidence that Rosas was incapable of forming the culpable mental state of intentionally on the dates of the offenses is mental condition evidence under section 16-8-107(3)(b), not evidence of insanity.

¶17 Dr. Remmert did as the court ordered. In her supplemental report, she opined that Rosas suffered from "a mental disease or defect" at the time of the offenses, but that such disease or defect "*did not* prevent him from forming the culpable mental state that is an essential element of [any of] the crimes charged."

¶18 The People then filed a petition pursuant to C.A.R. 21 seeking our intervention. And we issued a rule to show cause.

## II

¶19 The first question we must address is that of jurisdiction. We have repeatedly observed that we have discretion to determine whether to exercise our

original jurisdiction pursuant to Rule 21. *See* C.A.R. 21(a)(1) ("Relief under this rule . . . is a matter wholly within the discretion of the supreme court."); *People v. Rowell*, 2019 CO 104, ¶ 9, 453 P.3d 1156, 1159 ("The exercise of original jurisdiction under C.A.R. 21 rests solely within our discretion."). In exercising our discretion, we are mindful that Rule 21 provides "an extraordinary remedy that is limited in both purpose and availability." *Villas at Highland Park Homeowners Ass'n v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 22, 394 P.3d 1144, 1151; *accord* C.A.R. 21(a)(1) ("Relief under this rule is extraordinary in nature . . . ."). We have exercised our jurisdiction in circumscribed situations, such as "when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, or when a petition raises issues of significant public importance that we have not yet considered." *Rowell*, ¶ 9, 453 P.3d at 1159 (citations omitted).

¶20 In invoking our original jurisdiction, the People contend that a Rule 21 proceeding is the only adequate appellate remedy. We agree. Requiring the People to raise their claim on direct appeal would be inappropriate. Rosas claims that he is entitled to have Dr. Westmoreland testify that, as a result of a mental disease or defect, he lacked the capacity to form the culpable mental state of intentionally at the time of the offenses. The People counter that Rosas must plead NGRI or forgo the opportunity to introduce the challenged evidence. Because resolution of this disagreement will have significant ramifications, including with

respect to evidentiary matters at trial, forcing the People to wait to raise their claim on direct appeal is unsuitable.

## III

¶21 Having decided to exercise our original jurisdiction, we turn our attention to the standard of review that governs our analysis. Whether Rosas may introduce the disputed evidence without entering an NGRI plea hinges on our interpretation of several statutory provisions. The interpretation of a statute "is a question of law, which we review de novo." *People v. Steen*, 2014 CO 9, ¶ 9, 318 P.3d 487, 490.

## IV

¶22 In determining whether the district court erred, we must first assess the nature of the evidence Rosas wishes to present. The district court and the parties struggled with this aspect of the analysis. They initially used the outmoded moniker of "impaired mental condition," which caused confusion, and the court later inadvertently switched to viewing the proposed evidence through the section 16-8-107(3)(b) prism, an outlook Rosas adopted. These missteps, in turn, set off a cascade of consequences.[7]

---

[7] To be fair, this is a complex area of the law.

¶23    The challenged evidence is clearly relevant to the issue of insanity. Rosas himself initially called the evidence in question "impaired mental condition evidence," which, by definition, is evidence relevant to the issue of insanity. The second part of the two-part test used by the legislature to define insanity incorporates the former impaired mental condition defense. *Compare* § 16-8-101.5(1)(b) (providing the second part of the test for insanity), *with* § 16-8-102(2.7)(a) (defining "[i]mpaired mental condition" for purposes of offenses committed before July 1, 1995). It specifically refers to a mental disease or defect or a condition of mind caused by a mental disease or defect that "*prevented* the person from forming a culpable mental state." § 16-8-101.5(1)(b) (emphasis added). This is precisely the type of evidence Rosas plans to present at trial.

¶24    The court of appeals has consistently recognized that evidence of insanity includes evidence of a mental disease or defect that rendered the defendant *incapable* of forming the requisite culpable mental state at the time of the offense. *See, e.g., People v. Marko*, 2015 COA 139, ¶ 169, 434 P.3d 618, 652, *aff'd on other grounds, Marko v. People*, 2018 CO 97, 432 P.3d 607; *People v. Sommers*, 200 P.3d 1089, 1093 (Colo. App. 2008); *see also People v. Herrera*, 87 P.3d 240, 251 (Colo. App. 2003) (when a defendant claims he was insane under the second part of the two-prong test for insanity, Colorado law "limit[s] the admissibility of evidence acquired for the first time from [the] defendant's mental processes during the court-ordered

14

examination to issues involving his *capacity* to form a culpable mental state" (emphasis added)). We agree with the court of appeals.

¶25 Rosas nevertheless contends that, regardless of how Dr. Westmoreland's opinions are characterized, Colorado law does not require him to plead NGRI because he intends to offer the evidence at issue only in defending against specific intent crimes. Rosas misunderstands Colorado law.

¶26 The very statute on which Rosas leans, section 16-8-107, undercuts his position. Section 16-8-107(3)(a) provides, in no uncertain terms, that "[i]n no event shall a court permit a defendant to introduce evidence relevant to the issue of insanity . . . unless the defendant enters a[n] [NGRI] plea" pursuant to section 16-8-103(1.5)(a).[8] There is no exception for specific intent crimes in section 16-8-107(3)(a).

¶27 Giving the words and phrases in section 16-8-107(3)(a) their plain and ordinary meaning, *see Carrera v. People*, 2019 CO 83, ¶ 17, 449 P.3d 725, 729, we conclude that they prohibit a defendant—including one charged with specific intent crimes—from introducing evidence relevant to the issue of insanity unless

---

[8] Section 16-8-103(1.5)(a) states that "[t]he defense of insanity may only be raised by a specific plea" of NGRI entered at the time of arraignment, unless the court finds "good cause" to allow the plea to be entered later.

15

he enters an NGRI plea. Thus, Rosas may not introduce the challenged evidence without first pleading NGRI.

¶28 Contrary to Rosas's assertion, section 16-8-107(3)(b) does not warrant a different interpretation of section 16-8-107(3)(a). Whereas subsection (3)(a) addresses the admission of evidence relevant to the issue of insanity, subsection (3)(b) addresses the admission of expert evidence regarding mental condition. Under subsection (3)(b), "[r]egardless of whether a defendant enters a plea of [NGRI]," he may "introduce evidence in the nature of expert opinion concerning his . . . mental condition," so long as he has "given [timely] notice . . . of his . . . intent to introduce such evidence" and has "undergone a court-ordered examination." § 16-8-107(3)(b). In *People v. Flippo*, we reasoned that the statutory phrase, "[r]egardless of whether a defendant enters a plea of [NGRI]," unambiguously conveys that subsection (3)(b) "is meant to apply in those situations where insanity is *not* the reason the evidence is being introduced, such as evidence of an intellectual disability." 159 P.3d 100, 104 (Colo. 2007). Here, though, we've already determined that the evidence Rosas is attempting to introduce is relevant to the issue of insanity. Accordingly, subsection (3)(b) doesn't apply.

¶29 The argument rooted in section 16-8-106(6), which, like section 16-8-107(3)(a), affords no special treatment to specific intent crimes, is equally

16

unavailing for Rosas. True, section 16-8-106(6) requires that an examiner's report set forth: (a) an opinion as to whether the defendant suffered from a mental disease or defect (or from a condition of mind caused by it) "that *prevented* [him] from forming the culpable mental state" required; and, if so, (b) "[s]eparate opinions as to whether the defendant was insane or is ineligible for release." (Emphasis added.) However, section 16-8-106(6) applies only after a *sanity* examination is completed. *See* § 16-8-106(6) (requiring opinions that are relevant only to the issue of insanity). Stated differently, it can only be triggered by an NGRI plea, which Rosas has declined to enter. Therefore, Rosas cannot rely on this subsection to boost his position.

¶30 Notably, the contents of an examiner's report following a section 16-8-107(3)(b) examination are governed by 16-8-106(7), not section 16-8-106(6). Unlike subsection (6), subsection (7) makes no reference to a mental disease or defect (or to a condition of mind caused by it) that prevented the defendant from forming the culpable mental state required. And for good reason: mental condition evidence under section 16-8-107(3)(b) does not include evidence that a defendant lacked the *capacity* to form a requisite culpable mental state.

¶31 Finally, we are not persuaded by Rosas's reliance on section 16-8-103(1)(a), which, on the one hand, provides that a defendant who fails to plead NGRI "shall not be permitted to rely upon insanity as a defense," but on the other, indicates

17

that when a defendant is "charged with a crime requiring a *specific intent* as an element thereof," he "may introduce [expert] evidence of [his] mental condition as bearing upon his . . . *capacity to form the required specific intent.*" (Emphases added.) Section 16-8-103(1)(a) is irrelevant because it applies only to offenses committed before July 1, 1995, *see* § 16-8-103(1)(b), and the dates of the offenses in this case are between January 3 and 4 of 2018. For offenses committed on or after July 1, 1995, subsection (1.5)(a) applies. *See* § 16-8-103(1.5)(b). And subsection (1.5)(a) does not include the quoted language in subsection (1)(a) on which Rosas hangs his hat.[9]

# V

¶32    For all the foregoing reasons, we make the rule to show cause absolute. On remand, the district court must afford Rosas the opportunity to plead NGRI. If he doesn't, he may not introduce the challenged evidence. If he does, the district court should order a sanity examination pursuant to section 16-8-106.

---

[9] Crim. P. 11(e)(1) contains language almost identical to the language in section 16-8-103(1)(a). It appears that the rule was not updated when the legislature replaced subsection (1)(a) with subsection (1.5)(a).